STATE of Missouri, Appellant,

v.

John COX, Respondent.

No. WD 32701.

Missouri Court of Appeals,
Western District.

Sept. 7, 1982.

John Ashcroft, Atty. Gen., Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for appellant.

Daniel Linus Chadwick, Hamilton, for respondent.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

In this misdemeanor action, the state appeals the denial of its motion to reassess costs which were awarded to the indigent defendant's attorney. We remand with directions to the circuit court to make findings of fact as to whether, on February 23, 1981, when it fixed the fee and allowed the attorney's claim for expenses, funds were available to the Public Defender Commission for the purpose of compensating private attorneys.

On February 10, 1981, defendant John Cox, charged with three counts of the class B misdemeanor of property damage in the third degree, was found to be indigent by the circuit court of Caldwell County. The court appointed Daniel Linus Chadwick, a member of the private bar, as his attorney under the authority of § 600.046 and

§ 600.056.[1] After defendant was found guilty and the imposition of sentence suspended, he was placed on probation for two years. Attorney Chadwick on February 23, 1981, submitted a "Request for Payment of Fees and Expenses for Appointed Counsel Services" in the amount of $100 for attorney's fee and $13.44 for expenses. On the same day the court approved the request but on the basis of a February 2, 1981, memorandum from Burton H. Shostak, chairman of the Public Defender Commission, the Public Defender Commission refused to pay.

That memorandum had stated that

[a]s of January 1, 1981, we have paid $1,087,550 of the funds appropriated for the current year and as a result of this seriously low reserve, the Public Defender Commission has no alternative but to stop all payment of fees. We will continue to pay out-of-pocket expenses in excess of $500 out of what few funds remain . . . .

Mr. Chadwick moved the court for an order approving his fee and taxing it as costs against the plaintiff State of Missouri. The court did so on March 10, 1981. The state then moved for a reassessment of costs. The motion was denied. The State of Missouri now appeals that denial.

Both Mr. Chadwick and the state apparently assume that the Public Defender Commission's appropriations were exhausted when the court approved Mr. Chadwick's fee and expenses. Because of this assumption, the parties seem to think that this case turns on whether an attorney can recover fees and expenses in representing an indigent defendant only when funds are

available for that purpose as a result of an appropriation by the General Assembly, or whether funds can be recovered by classifying the costs of representation as "court costs". Mr. Chadwick argues that whether or not appropriations were available to the Public Defender Commission, he is entitled to payment because in choosing to prosecute Cox and recognize him as an indigent, the state incurred all expenses of Cox's prosecution, including those of his defense, *on its own behalf*.[2] This necessarily makes his fee a part of "court costs", Mr. Chadwick argues, making availability of Public Defender funds immaterial.

We disagree.

The only possible basis for classification of such fees as "court costs" is the argument presented by Mr. Chadwick that because of the representation of indigent defendants is a constitutional burden of the state,[3] any costs incurred in discharging that duty cannot be imposed on the individual attorney, but must be borne by the state. In support of that argument, Mr. Chadwick looks to *State v. Green,* 470 S.W.2d 571 (Mo.1971) (en banc), where the Supreme Court of Missouri recognized that since the earliest days of statehood, lawyers in Missouri have borne the burden of representing indigent defendants. Due to the increased complexity and demands of criminal representation, however, the court held at 573 that it would not, after September 1, 1972, "compel the attorneys of Missouri to discharge alone" a duty which constitutionally is the burden of the state.

Following this decision, the General Assembly responded by enacting § 600.010–§ 600.085, which provided for the

---

1. All sectional references are to Revised Statutes of Missouri, 1978.

2. The state contends that this choice of words is apparently used to place the costs outside the language of § 550.020(1) and § 550.030, which provide that the state or county shall pay the costs, except such as were "incurred on behalf of the defendant". On a careful reading of these statutory sections, however, it is clear that neither section is applicable in this case. Section 550.020 applies only to capital cases and to all cases where the defendant is sentenced to imprisonment in the penitentiary.

Section 550.030 applies only where the defendant is sentenced to imprisonment in the county jail, or to pay a fine, or both. Neither circumstance is present here, where defendant was charged only with a misdemeanor and was neither sentenced nor fined.

3. See *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *State* ex rel. *Gibson v. Grimm,* 540 S.W.2d 17 (Mo.1976) (en banc).

defense of indigents charged in connection with a felony. These provisions were revised in 1976 to provide as well for the defense of indigents charged with a misdemeanor which will probably result in confinement in the county jail upon conviction.[4] The court in *State* ex rel. *Gibson v. Grimm,* 540 S.W.2d 17 (Mo.1976) (en banc), recognized at 18 that with these provisions, "the burden on the attorneys of Missouri has now, for all practical purposes, ended."

Mr. Chadwick argues that with the recent failure of the state to pay attorneys' fees and expenses, the state is again in noncompliance with the "ultimatum" issued in *Green* and that a different mechanism is required for the recovery of fees.

That reasoning was wholly rejected by the Missouri Supreme Court in its recent decision in *State* ex rel. *Wolff v. Ruddy,* 617 S.W.2d 64 (Mo.1981) (en banc).

There, Wolff had refused to represent an indigent defendant after being informed that "[u]nder the present status of the appointed counsel fund, said attorney will not be paid or reimbursed for any of his expenses." *Id.,* at 65. The court recognized that at the time of its decision, May 7, 1981, the money appropriated by the General Assembly for representation of indigent defendants for the fiscal year ending June 30, 1981, had been entirely spent. After quoting from the Missouri Constitution, Art. IV, § 28, that, "[n]o money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law ...", the court stated at 65 that in order to prevent the administration of criminal justice from grinding to a halt in Missouri, "we must turn again to the Bar of Missouri. We do so without apology."[5]

The court quoted extensively from EC 2–16 of Rule 4 of the Supreme Court, which states that "persons unable to pay all or a portion of a reasonable fee should be able to obtain necessary legal services, and lawyers should support and participate in ethical activities designed to achieve that objective." In addition, the court reminded Missouri attorneys of their oath prescribed in Rule 8.11 which reads, "I do solemnly swear ... that I will never reject from any consideration personal to myself the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice. So help me God."

With these principles in mind, the court promulgated guidelines for the problem of indigent defendants and called on "all members of the legal profession who may be appointed to accept appointment ... and to refuse such service only with recognition that such refusal may be the subject of disciplinary action." *Id.,* at 67.

Clearly, then, the Supreme Court of Missouri has addressed the issue raised by Mr. Chadwick and held that the duty to provide representation for indigent defendants *can* be imposed on the individual attorney alone rather than on the state, at least temporarily until the legislature provides relief.

We hold, therefore, that Mr. Chadwick's fee and expenses incurred in the defense of an indigent defendant cannot be classified as "court costs" which must be borne by the state. Assuming arguendo that attorneys' fees may in any event be classified as costs,[6] the general rule was stated in the oft-cited *Murphy v. Limpp,* 347 Mo. 249, 147 S.W.2d 420 (1940), which recognized at 423 that "the general and well established rule apart from statute [is] that costs are not recoverable from a state, in her own courts, whether she has brought suit as plaintiff or has properly been sued as defendant; or whether she is successful or defeated."[7]

---

4. *See* § 600.046.

5. The rigid view of attorneys' responsibilities toward indigents espoused by the Missouri Supreme Court in *Wolff* has not gone without criticism. *See* Popper, *Forced Labor Without Apology,* 37 J. Mo. Bar 446 (1981).

6. *See Mayor, Councilmen, and Citizens of the City of Liberty, Missouri v. Beard,* 636 S.W.2d 330 (Mo.1982) (holding that absent special circumstances, costs are not interpreted to include attorneys' fees).

7. This rule has been cited in numerous Missouri cases. *See* specifically, *Automagic Vendors, Inc. v. Morris,* 386 S.W.2d 897 (Mo.1965) (en

More specifically, *Cramer v. Smith*, 350 Mo. 736, 168 S.W.2d 1039 (1943) (en banc), held that "in criminal as in civil cases . . . the recovery and allowance of costs rests entirely on statutory provisions—that no right to or liability for costs exists in the absence of statutory authorization."

Therefore, to recover costs from the state, Mr. Chadwick must rely only on specific statutory authority. No such authority exists.

The trial court's March 10, 1981, order seems, however, also to have based the award on the provisions of §§ 600.010—600.160. Of course, on February 23, 1981, the court in strict compliance with § 600.-150 had already "fixed" the attorney's fee and "allowed" the expenses, thus ordering the Commission to make the payments called for in the statute.

Section 600.150 provides as follows:

Counsel, other than a public defender, appointed by a court in any circuit to represent an indigent person shall, at the conclusion of the representation, or any part thereof, be reimbursed for actual expenses reasonably incurred . . . in the representation or defense of the person . . . . The court may allow the claim for reimbursement of expenses and the court shall, in addition, fix a reasonable fee for the services of counsel to be paid to such counsel for the representation. . . . Both the reimbursement of expenses and the attorney's fee for services shall be paid by the state from funds appropriated for that purpose.

In addition, § 600.160 provides that "[u]nder no circumstances may the expenditures from general revenue for the purposes provided in sections 600.010 to 600.160 exceed the amount, five million dollars, if and when appropriated by the general assembly for such purposes."

The language of § 600.150 limiting the payment of such fees to "funds appropriated for that purpose" and the ceiling imposed by § 600.160 leave no doubt that the intention of the legislature was that the funds provided by the General Assembly, and only those funds, may be used for payment of counsel.

Mr. Chadwick can look, therefore, only to that fund. To hold otherwise, allowing attorneys to obtain a judgment against the state when funds have not been allotted for that purpose, would render the *Wolff* decision meaningless.

By holding as it did in *Wolff* that all members of the legal profession must accept appointment to represent indigent defendants at a time when the fiscal "cupboard is bare" or face disciplinary action, the Supreme Court of Missouri decided that attorneys must bear the financial loss of representation without compensation. To hold now that an unpaid attorney can obtain a judgment against the state for payment from general funds not appropriated for that purpose, would subvert the directives of *Wolff* and give attorneys the opportunity to avoid the obligations the supreme court imposed.

■ We do not do so. We hold, instead, in accordance with *Wolff*, that when no funds have been appropriated for payment of counsel representing indigent defendants, or when such funds have been expended, attorneys not only have an obligation to accept the representation, but must do so without expecting payment from the state's general revenues.

What we have said to this point assumes that the Public Defender Commission's appropriation for the payment of private counsel was exhausted on February 23, 1981, when the court fixed the fee of $100 and allowed the attorney's claim for ex-

banc) (because there must be a specific provision authorizing costs to be taxed against the state, Civil Rule 77.06 which provided only that "the party prevailing shall recover his costs against the other party . . ." was not adequate specifically to impose liability); and *Hartwig-Dischinger Realty Co. v. Unemployment Com-*

*pensation Commission,* 350 Mo. 690, 168 S.W.2d 78 (1943) (en banc) (awarding costs against the Unemployment Compensation Commission was in error because the commission was "merely representing the state" in the case).

penses. In this case, however, the record is not clear, in that it does not reveal whether, at the time of that order, any funds actually remained. No allegation was made or proof offered by either party that the fund was depleted,[8] although language in the briefs indicates depletion is assumed. On the contrary, the memorandum from the Public Defender Commission, dated February 2, 1981, states that, while the reserve remaining was "seriously low", expenses in excess of $500 would still be paid out of "what few funds remain in reserve for as long as these last." [9] Obviously, *at the time the memorandum was written,* some money was available.

The status of the appropriation is the key to this case. If no funds remained *at the time of the order* of February 23, the court was acting without jurisdiction.

 A court of general jurisdiction, when it engages in the exercise of a special statutory power, is confined strictly to the authority given by the statute. *State ex rel. Kansas City v. Public Service Commission,* 362 Mo. 786, 244 S.W.2d 110, 115 (1951). In exercising such power, the court is one of limited jurisdiction. *Green v. Woodward,* 588 S.W.2d 522 (Mo.App.1979). A court will be found to be acting in "excess of jurisdiction" when an order, although within the general power of the judge, is not authorized with respect to the particular case because the conditions which authorize the exercise of the general power are absent. The effect is that the judgment is void. *Pogue v. Swink,* 365 Mo. 503, 284 S.W.2d 868 (1955).

 Here, the circuit court was authorized by § 600.150 to award attorney's fees and expenses to counsel, but the state was empowered to pay such awards only up to the amount appropriated for that purpose by the General Assembly. The court's authority, therefore, must be strictly confined to the awarding of fees and expenses only so long as funds remained available.

In light of the mandatory language of § 600.150 requiring that the court "shall" fix a reasonable fee to be paid to counsel and that the attorney's fees "shall" be paid by the state from the funds appropriated for that purpose, we hold that as long as any funds remained in the Public Defender Commission's appropriation for payment of private counsel representing indigents, the state was obligated to pay Mr. Chadwick the amount ordered by the court.[10]

If, however, as of February 23, 1981, the date of the order, no funds remained, the judgment ordering the state to pay Mr. Chadwick the amount of $113.44 was in excess of that court's jurisdiction and void.

We reverse and remand this case to the circuit court with directions first, to comply with the mandate of § 600.100 [11] if that has not already been done; and second, if necessary, to make findings of fact as to whether on February 23, 1981, $113.44 remained in the Public Defender Commission's appropriation for private counsel. To the extent that as of the close of business on that date money appropriated for the fund remained, the judgment was valid. If no funds were available at that time, the judgment was void.

All concur.

---

**8.** This case is another example of the problems which result when the state attorney general's office is not in control from its inception of all litigation involving the state. If the depletion of the fund had been asserted and determined to be true at the circuit court level, remand of this case would not be necessary.

**9.** No authority is cited to us as the basis for the Public Defender Commission's creation of such priorities.

**10.** A wise administrator would have retained the amount of this judgment in the fund until learning of the decision in this appeal. If this was not done, Mr. Chadwick will perhaps have to pursue a different remedy. Perhaps also, the Public Defender Commission has made some effort to catch up on earlier awards of this kind. The record is silent as to these matters.

**11.** Section 600.100 requires a hearing after final judgment at which the court shall determine the present ability of the defendant to pay all or part of the cost of representation, including reimbursement for counsel.