STATE OF OHIO, ex rel., Anthony J. CELEBREZZE, Jr. Attorney General of Ohio, Petitioner,

v.

NUCLEAR REGULATORY COMMIS-SION, and the United States of America, Respondents.

No. 86–4019.

United States Court of Appeals, Sixth Circuit.

Feb. 24, 1987.*

* The Stay granted in this case on Nov. 13, 1986, was vacated on Dec. 23, 1986.

David E. Northrop, Sharon Sigler, Atty. Gen.'s Office, Columbus, Ohio, for petitioner.

Peter Crane, Office of the General Counsel, Nuclear Regulatory Com'n, Washington, D.C., William H. Briggs, for NRC.

Jay E. Silberg, Shaw, Pittman, Potts, & Trowbridge, Washington, D.C., for CEI.

Edwin Meese, II, Atty. Gen. of the U.S., U.S. Dept. of Justice, Washington, D.C., for the U.S.

Before MARTIN, JONES, and MILBURN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

On November 13, 1986, we issued a stay requested by the State of Ohio. The purpose of this opinion, issued after the entry of that order, is to clarify the standards we will apply in reviewing an application for a stay of a proceeding or for a stay directing affirmative action on the party of a federal agency.

This stay was requested pursuant to Rule 18 of the Federal Rules of Appellate Procedure, 5 U.S.C. § 705, and 28 U.S.C. § 2349(b). By its motion, Ohio asked the Court to stay the Nuclear Regulatory Agency's issuance of a full power operating license to the Perry Nuclear Plant, pending review of the Agency's final order which denied Ohio intervenor status in the licensing proceedings.

■ As with a stay of a district court order in a civil proceeding pending appeal, *e.g., Commonwealth-Lord Joint Venture v. Donovan*, 724 F.2d 67, 68 (7th Cir.1983), the determination of whether a stay of an agency's order is warranted must be based on a balancing of four factors. These factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C.Cir.1985). These factors are the same ones considered in evaluating the granting of a preliminary injunction. *See Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261 (6th Cir.1985); *In re DeLorean Motor Company*, 755 F.2d 1223 (6th Cir.1985); *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256 (6th Cir.1977).

■ To justify the granting of a stay, a movant need not always establish a high probability of success on the merits. *Cuomo*, 772 F.2d at 974. Indeed, the language courts have used to describe the "success factor" has varied, and we have previously found that the variance can best be reconciled by recognizing that the four considerations are factors to be balanced and not prerequisites to be met. *DeLorean*, 755 F.2d at 1229. The probability of success that must be shown is inversely proportional to the degree of irreparable injury the plaintiffs will suffer absent an injunction. *Cuomo*, 772 F.2d at 974; *DeLorean*, 755 F.2d at 1229. Thus, a stay may be granted with either a high probability of success and some injury or *vice versa*. *Cuomo*,

772 F.2d at 974. However, we reiterate that the demonstration of a mere "possibility" of success on the merits is not sufficient, and renders the test meaningless. *Mason County*, 563 F.2d at 261 n. 4; *DeLorean*, 755 F.2d at 1228–29. Ordinarily the party seeking a stay must show a strong or substantial likelihood of success. However, at a minimum the movant must show "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if a [stay] is issued." *DeLorean*, 755 F.2d at 1229 (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982)).

■ In evaluating the harm which will occur both if the stay is issued and if it is not, we look to three factors: (1) the substantiality of the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof provided. *Cuomo*, 772 F.2d at 977. Here, we agree with the District of Columbia Circuit that economic loss does not constitute irreparable harm, in and of itself. *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.Cir.1985). Economic loss is generally recoverable while injunctive relief is available only when legal remedies prove inadequate. *See id.* at 675. In addition, the harm alleged must be both certain and great, rather than speculative or theoretical. *Id.* at 674. Here, we would like to clarify that "certainty" in a case such as this does not require a showing that a nuclear accident will occur at the plant involved. Rather, it requires evidence which documents that in the event of a nuclear accident the allegedly inadequate emergency evacuation plans would present an actual danger to the general public.

■ In order for the reviewing court to adequately balance these factors, the party seeking a stay must address each of the factors regardless of its strength, and provide us with facts and affidavits supporting these assertions. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again. *Wiscon-*

sin Gas Co., 758 F.2d at 674. We require that the record contain evidence from which we can make specific findings. It should be presented in a non-technical format, allowing the average adult reader to make a reasonable determination.

We would like to point out that this same test does not apply to stays pending review in criminal proceedings pursuant to Rule 38 of the Federal Rules of Criminal Procedure and Rule 9(b) of the Federal Rules of Appellate Procedure. The process involved in criminal cases is entirely different.

*Evaluation of the Four Factors*

A. *Likelihood of Success*

■ In this case Ohio does not seek to permanently enjoin the licensing of the Perry Nuclear Power Plant. Rather, Ohio contends that an adequate offsite emergency evacuation plan has not been developed, and it seeks to participate in a reformulation of the plan by meeting again with members of the Nuclear Regulatory Commission. This plan is required by 10 C.F.R. § 50.47(a)(1) prior to the full power operation of a nuclear power plant.

We believe that Ohio has alleged sufficient facts to demonstrate that a re-evaluation of the plan is warranted. The January 1986 earthquake in Northern Ohio and the April 1986 Chernobyl accident highlighted numerous inadequacies in the evacuation plan. In August 1986, the Governor of Ohio withdrew his approval of the then existing plan, and appointed The Emergency Evacuation Review Team to re-evaluate it. This Ohio cabinet-level task force made preliminary findings which articulated the plan's deficiencies. Ohio's memorandum in support of its motion for a stay included this list of deficiencies as well as the affidavit of William Denihan who chaired the task force. The affidavit contained eighteen paragraphs which appropriately detailed the plan's problems in plain English.

Given the provision of 10 C.F.R. § 2.715(c) which allows an interested state to participate in proceedings before the Commission, and given the apparent inadequacies of the emergency evacuation plans, we believe that Ohio has demonstrated a sufficient probability of success on the merits of its action. We find Ohio's petition particularly persuasive when considered in conjunction with the severity of the injuries an insufficient emergency plan might cause to the public. The issues of injury and the public interest are addressed below.

B. *Irreparable Injury*

■ As we stated earlier, the harm alleged should be evaluated in terms of its substantiality, the likelihood of its occurrence, and the proof provided by the movant. *Cuomo*, 772 F.2d at 977.

Though in this case the likelihood of a nuclear accident is concededly small, the potential severity is enormous. The accident at Chernobyl has demonstrated that the injuries which could result are indisputably irreparable. When compared to the mere economic loss which will result from a delay of full power licensing, it would be unconscionable to allow the full power license to issue absent adequate emergency preparedness plans. It is difficult to visualize particular scenarios, but when dealing with a force as powerful as nuclear energy every effort should be made to minimize risks.

C. *Harm to Others*

■ As we stated, mere economic loss does not constitute irreparable injury. Thus, though the licensee is certain to be economically harmed by a delay, the loss is not substantial. This economic loss can later be recouped when the plant begins full power operation. The licensee has submitted no proof of any additional non-economic harm which may result from the delay of the issuance of a full power operating license. Nuclear power as an energy source involves certain risks, both economic and physical, and a utility which chooses to construct a plant necessarily assumes the risk of delay and the accompanying economic loss. The economic harm is far less severe than the potential danger posed to the public if an accident occurs without adequate evacuation plans in force. Unlike the situation in *Cuomo* where the utility

alleged that a delay in the granting of a five percent power license might result in the loss of valuable personnel which would cause irreparable injury, we find that the delay in granting of this license would not present such a risk. Even if it did, we agree with the District of Columbia Circuit that these risks and costs are self-imposed. *Cuomo*, 772 F.2d at 977.

### D. *The Public Interest*

 Though there is more than one public interest involved here, the most crucial concern is public safety. *Cuomo*, 772 F.2d at 978. We believe that Ohio has adequately demonstrated that the emergency plans may be deficient. Therefore, the safety concern outweighs any economic harm which utility ratepayers may suffer as a result of the delay in licensing.

### *Conclusion*

It is our belief that the petitioner adequately demonstrated the need for a stay in this situation. For these reasons the motion was granted.

### ORDER

We have considered all of the documents filed by the parties in this proceeding in light of the criteria set forth in *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972 (D.C.Cir.1985). The four factors articulated are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Cuomo* at 974. That court stated that the movant need not always establish a high probability of success on the merits. Rather, it found that probability of success was inversely proportional to the degree of irreparable injury evidenced. Thus, it held that a stay may be granted with either a high probability of success and some injury, or *vice versa*. The court held that the potential harm should be evaluated in terms of its substantiality, the likelihood of its oc-

currence and the adequacy of proof, and it found the primary consideration for the public to be safety.

Because here we are considering the issuance of a full power license and not a five percent power license as in *Cuomo*, we find the safety considerations to be significant, whereas the economic considerations regarding the potential loss of personnel are less likely to be a problem, therefore,

It is ORDERED that implementation of the full-power operating license for the Perry Nuclear Power Plant allowing it to exceed its current five percent power level be and hereby is stayed. The Clerk is directed to set an expedited briefing schedule for this case. All interested parties will be permitted leave to intervene upon seeking leave from this Court.

ENTERED BY ORDER OF THE COURT