Carl Gabel, U.S. Dept. of Justice, Washington, D.C., Ron Parry, Covington, Ky., for plaintiffs.

Gary Herfel, Frost & Jacobs, Covington, Ky., for defendants.

**UNITED STATES of America, Plaintiff,**

**v.**

**GLASS MENAGERIE, INC., et al., Defendants.**

**Michael Jason BASEY, et al., Plaintiffs,**

**v.**

**GLASS MENAGERIE, INC., et al., Defendants.**

**Civ. A. Nos. 88–16, 88–64.**

United States District Court, E.D. Kentucky, at Covington.

April 21, 1988.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

BERTELSMAN, District Judge.

This matter came on for an evidentiary hearing before the court on April 18, 1988, on the motions of the plaintiffs in the two cases referenced in the caption for a preliminary injunction. Civil Action No. 88–16 is an action by a number of private individuals who are black persons who claim to have been discriminated against by the admission policies of an establishment known as the Glass Menagerie, which is a popular local restaurant and cocktail lounge/nightclub. Plaintiff in Civil Action No. 88–64 is the United States, which has filed a separate action making essentially the same allegations.

After a preliminary hearing held on April 13, 1988, the court determined that an evidentiary hearing was necessary, which was held on April 18.

This court, having considered the facts and arguments presented and being fully advised in the premises, finds that the plaintiffs have met their burden of demonstrating that they are likely to succeed on the merits in this action, that irreparable injury would occur without immediate relief, that issuance of the preliminary injunction would cause no substantial harm to others, and that the public interest favors the granting of the preliminary relief sought.

### FINDINGS OF FACT

1. The court finds that the restaurant/nightclub known as the Glass Menagerie is operated by the defendant, Goebel's Watch, Inc., which is in turn controlled by

the defendant, Laurence W. Grause. This restaurant/nightclub will be referred to throughout these findings as the Glass Menagerie.

2. The Glass Menagerie is a place of public accommodation located in Covington, Kentucky. No claim is made that it is a private club. Further, it is situated a few hundred yards from the Ohio River and less than a hundred yards from an interstate highway. Customers from Ohio, in particular the Cincinnati area, are sought by the establishment and substantial numbers of customers come to the Glass Menagerie directly from interstate travel and interstate commerce. As a consequence, its operations significantly affect interstate commerce.

3. Several witnesses, who are black persons, both male and female, testified that they had been kept waiting in line outside the building to receive admission to the nightclub portion of the Glass Menagerie. They testified that while they were kept waiting in line, white persons were admitted ahead of them. Two former doormen employed at the Glass Menagerie testified that they had been instructed to discourage attendance by black customers because such customers were perceived not to spend as much money as white patrons, to not be "big tippers," and to bother white female customers. There was further testimony that two principal devices were used in furtherance of this illegal policy—a "VIP Card" and a "VIP entrance."

4. The "VIP Card" is issued on a nonsystematic basis. Some patrons are charged $100 for it. It is given free to other patrons who happen to know an employee. The "VIP Card" entitles a holder to bypass the line at crowded times and also entitles the holder to certain discounts. No complaint is made of its use for the purpose of allowing discounts.

5. The "VIP entrance" is located separately from but near the main entrance. It is used to enable cardholders to bypass the line. The court finds that it is also used to enable whites who are not cardholders to avoid the line and is used to discriminate against blacks in the manner described in the evidence.

6. Defendant called several witnesses who testified to the effect that it has no policy of discrimination, that patronage by black customers is encouraged and solicited, that its "VIP Cards" are distributed on a nondiscriminatory basis to anyone who wants one, and that any black customers caused to wait in line while white persons were admitted ahead of them misperceived the situation as discrimination when it was really caused by the establishment being crowded and the white customers making legitimate use of the "VIP Card."

7. The court has carefully considered this conflicting testimony and finds that discrimination did occur against black persons on a sporadic basis at the Glass Menagerie. Black witnesses were called on behalf of the defendant who testified that they frequently attended the establishment, had been issued a "VIP" or dining card and had never experienced or observed any form of discrimination. Defendant further presented evidence, including a film prepared for a television commercial, showing black customers in attendance at the nightclub. However, the court cannot discredit the overwhelming evidence by black persons who testified to having been harassed or delayed in seeking admission to the nightclub. The court also notes that the only black witness who frequented the Glass Menagerie at the times in question was charged $100 for his card. The testimony indicated that the card was distributed without charge to many other customers.

8. The court also finds that the testimony of the ex-doormen who testified to having been specifically instructed to hinder, delay or prevent the admission of black persons to the nightclub to be highly persuasive. These witnesses had no reason to exaggerate or prevaricate and do not appear to the court to exhibit any ill will or hostility toward the defendants or to be acting out of any motive other than a spirit of public interest. The court also finds highly credible and accepts the testimony of the black witnesses who were bypassed

in the admission line and whose protests were ignored.

9. The court must further find that this discrimination, although sporadic, was deliberate. The court can make no finding, however, that any such discriminatory intent was established as to Mr. Grause who apparently is something of an absentee owner. The discriminatory intent, as far as the evidence shows, was limited to misguided subordinate managers.

10. The court finds that the manner in which the discrimination was primarily implemented was by use of the "VIP Cards" and the "VIP entrance," as described above.

11. In light of the past intentional discrimination described above, the court finds that the use of the "VIP Cards" or special "VIP entrance" to regulate admission constitutes an illegal and unacceptable discriminatory device.

## CONCLUSIONS OF LAW

1. All elements of the court's jurisdiction over both these cases have been fully and completely established. The complaint in each case alleges that defendants have engaged in a pattern or practice of denying to persons on the basis of race or color the use and enjoyment of the goods, services, facilities and accommodations of the Glass Menagerie in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.* Consequently, jurisdiction exists pursuant to 42 U.S.C. § 2000a–6, which states that the "district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this title...."

2. Title II requires places of public accommodation to indiscriminately provide equal access to their facilities. Section 2000a(a) provides:

> (a) Equal access. All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

3. Also, the Glass Menagerie's operations "affect commerce" within the meaning of § 2000a(b), *see, e.g., Wooten v. Moore,* 400 F.2d 239 (4th Cir.1968), thereby making the establishment subject to the provisions of Title II. Therefore, after having factually determined that blacks have been intentionally denied equal access to the facility, it remains to be decided whether the issuance of a preliminary injunction is appropriate in this instance.

4. The individual plaintiffs and the United States have established the existence of the generally accepted factors for the issuance of a preliminary injunction. These factors are: (a) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (b) whether the movant has shown irreparable injury; (c) whether the preliminary injunction could harm others; and (d) whether the public interest would be served by issuing the preliminary injunction. *See Frisch's Restaurant, Inc. v. Shoney's, Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985); *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985); *State of Ohio v. Nuclear Regulatory Commission,* 812 F.2d 288, 290 (6th Cir.1987).

5. In this case, irreparable injury is occurring to the public and black patrons and the public policy of the United States by reason of the occurrence of sporadic discrimination at the Glass Menagerie as described in the Findings of Fact above.

6. On the other hand, while the defendant has shown that the use of the "VIP Card" and separate entrance may be of some benefit to it when used for legitimate purposes, it has shown no irreparable injury that would result to it from temporary discontinuance of said "VIP Card" and separate entrance.

7. By reason of the strong evidence described in the findings of fact, *supra,* the plaintiffs have shown a strong probability of success on the merits with regard to the existence of past sporadic discrimination and the propriety of receiving an award of at least some form of final injunctive relief. *See Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.

2d 258 (1964) (issuance of injunction is proper remedy where large motel's actions of denying persons equal access to its facilities "affected commerce" in contravention of Title II); *Hughes v. Marc's Big Boy,* 479 F.Supp. 834 (E.D.Wis.1979) (even a single act of discrimination may provide a basis for injunctive relief under the public accommodation provisions). Further, 42 U.S.C. § 2000a–3 prescribes injunctive relief as an appropriate remedy for denials of equal access to public accommodation facilities.

8. The overwhelming consideration in this case is the public interest. Further, discussion of this factor may be found below.

9. Although there is no reason to discontinue use of the "VIP Card" as a discount method, the court concludes that injunctive relief is required on a temporary basis to discontinue its use as a device regulating admission to the restaurant or nightclub. Granting such preliminary injunctive relief is required in order to assure that all discrimination and any possible public perception thereof is immediately discontinued. The court considers the achievement of both these goals to be of overwhelming public importance.

### THE PUBLIC INTEREST

The passage of the statute referred to in these findings was a giant step forward for this nation. Without these laws the fundamental precept on which our country was established—"that all men are created equal"—was a sham.

The court can remember the 1940's and 1950's when restaurants, swimming pools, and other establishments, which obviously were soliciting public patronage, pretended to issue membership cards describing themselves as private clubs. If a black person showed up he or she was told the establishment was a private club, but white people were handed a "membership card" on payment of the admission fee, even if it was the first time they had been there.

There are still unsettled issues with regard to discrimination—affirmative action, "reverse discrimination," bussing, and treatment of truly private clubs, among

others. But this case involves none of these. The court had thought no one could be found in 1988 who would seriously oppose equal admission to places of public accommodation. The court had thought Jim Crow was dead. The court had thought his passing unlamented by all Americans. He will not be permitted to be resurrected while this court sits.

The 1940's and 1950's had many pleasant nostalgic aspects, but the flagrant discrimination in public accommodations that was permitted to exist was not one of them. It was a disgrace. It was an abomination of which we all should be ashamed. To permit it to recur in any form or to any degree would be a regression in the evolution of our society. Any such resurgence must be immediately and decisively eliminated whenever it occurs.

The court does not mean to suggest that the managers of the Glass Menagerie had these considerations in mind when the abuses described herein occurred. The court would like to believe that these discriminatory acts occurred through short-sightedness rather than malice. The court is optimistic that voluntary corrective action will be promptly taken to eliminate all vestiges of discrimination at the Glass Menagerie. Even so, however, and even though the discrimination was sporadic, the compelling public interests discussed above require the immediate issuance of injunctive relief.

Therefore, for the reasons stated above, the court being advised,

IT IS ORDERED as follows:

1. That the motions of the plaintiffs for a preliminary injunction be, and they are, hereby GRANTED;

2. That a preliminary injunction issue in separate document, as required by F.R.Civ. P. 65. Said separate preliminary injunction is filed concurrently herewith.

### PRELIMINARY INJUNCTION

For reasons stated in the Findings of Fact and Conclusions of Law entered con-

currently herewith, the court being advised,

IT IS HEREBY ORDERED AND ADJUDGED that the motions of plaintiffs for a preliminary injunction be, and they are, hereby GRANTED, and the defendants, Glass Menagerie, Inc., Goebel's Watch, Inc. and Laurence W. Grause, together with each of their agents, employees and all those in active concert or participation with them, are hereby enjoined and restrained until further order of this court from:

1. Failing and refusing to admit black persons to the Glass Menagerie on the same basis and under the same conditions as white members of the general public are admitted;

2. Refusing to make any of the facilities of the Glass Menagerie available to black persons on the same basis and under the same conditions as such facilities are made available to white members of the general public;

3. Failing or refusing to ensure that all of the goods, services, facilities, privileges, advantages, and accommodations of the Glass Menagerie are made available to and used by black persons on the same basis and under the same conditions as such are made available to white members of the general public;

4. Engaging in any act or practice that deprives, directly or indirectly, any person on the basis of race or color of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Glass Menagerie;

5. Engaging in any act or practice which is intended to limit or discourage black persons from patronizing the Glass Menagerie, including but not limited to (a) using pretexts such as the requirement of a "VIP Card" for admission in order to limit the number of blacks in the Glass Menagerie, and (b) providing any priority in admission to the Glass Menagerie to present holders of "VIP Cards."

6. The use of the "VIP Card" or any form thereof as a criteria for admission or the use of a separate entrance for the admission of customers shall be discontinued, effective immediately. All patrons shall be admitted on a first come first served basis through one entrance in a nondiscriminatory manner. A *bona fide* reservation system may be used in the restaurant portion of the Glass Menagerie establishment, if employed on a *bona fide* nondiscriminatory basis.

IT IS FURTHER ORDERED AND ADJUDGED that this relief is preliminary and temporary in nature and shall be in effect until further order of the court. If the defendants desire to reinstitute use of the "VIP Cards" or separate entrance to establish priorities for admissions to their establishment, they shall submit a plan therefor to the court in the form of a motion to modify this injunction. Said plan will not be approved unless the court is satisfied, after having given the plaintiffs an opportunity to be heard, that the "VIP Cards" and/or separate entrance can and will be used for legitimate purposes in a nondiscriminatory manner.