**STATE of Missouri ex rel. DIRECTOR OF REVENUE, STATE OF MISSOURI, Relator,**

v.

**The Honorable J. Dan CONKLIN, Judge of the Circuit Court of Greene County, Respondent.**

No. 22884.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 6, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Special Asst. Atty. Gen., Jefferson City, for relator.

Robert E. Childress, Springfield, for respondent.

CROW, Judge.

On October 9, 1998, Greg Michael Grisham ("Driver") was arrested for driving while intoxicated. A "breath analysis" showed he "had a blood alcohol concentration of .108%." Consequently, the Director of Revenue ("Director") suspended Driver's motor vehicle operator's license pursuant to § 302.505.[1]

The suspension was upheld after administrative review per § 302.530, whereupon Driver filed a two-count petition in the Circuit Court of Greene County. Count I prayed for trial de novo per § 302.535. Count II prayed the trial court to "issue a stay order abating the proposed administrative suspension of [Driver's] license privilege, pending final and full hearing of Count I."

On the day Driver's petition was filed, Respondent, an associate circuit judge of the Circuit Court of Greene County, entered a "Stay Order" commanding Director "and his agents and representatives" to "cease and desist from proceeding with [Driver's] license suspension ... until the Court has finally and judicially determined the issues raised by [Driver] herein."

Director, as relator, promptly commenced this original proceeding in prohibition in this court, praying this court to issue a peremptory writ in prohibition compelling Respondent to "recall" the Stay Order.

This court issued a preliminary order in prohibition barring Respondent from enforcing the Stay Order until further directive from this court. Respondent thereafter filed an answer to Director's petition, and the parties subsequently filed briefs.[2]

Director maintains Respondent lacked authority to enter the Stay Order by reason of subsection 2 of § 302.535, the first sentence of which reads:

"The filing of a petition for trial de novo shall not result in a stay of the suspension or revocation order."

The above-quoted statutory provision has remained unchanged since it appeared in RSMo Cum.Supp.1984.

In *State ex rel. King v. Kinder,* 690 S.W.2d 408, 409 (Mo. banc 1985), the court held:

"We agree with the Director's contention that the circuit court's power to issue an order staying the revocation of [the motorist's] license was abrogated by the enactment of § 302.535(2), RSMo Cum.Supp.1984, which states in pertinent part that '[t]he filing of a petition for trial de novo shall not result in a stay of the suspension or revocation order.' The language could not be more explicit."

The opinion in *King* continued:

"The trial de novo procedure employed by [the motorist] to obtain a rehearing on the revocation of his license is purely a statutory remedy. When a court of general jurisdiction engages in the exercise of special statutory power, such as the trial de novo set out in § 302.535.1, RSMo Cum.Supp.1984, the court's authority is strictly confined to that provided in the statute. *Randles v. Schaffner,* 485 S.W.2d 1, 3 (Mo.1972); *State v. Cox,* 639 S.W.2d 425, 430 (Mo. App.1982). Here, the statute emphatically restricts the court's power to issue a stay. The circuit court must comply with the legislative directive. The [circuit court's] stay order was in excess of jurisdiction and, hence, void. *Id.*"

*King,* 690 S.W.2d at 409[1, 2].

Despite the holding in *King,* a trial court in *State ex rel. Director of Revenue v.*

---

1. References to statutes are to RSMo Cum. Supp.1998 unless otherwise indicated.

2. The lawyer representing Driver in the trial court filed Respondent's answer and brief in this court.

*Gabbert,* 925 S.W.2d 838 (Mo. banc 1996), issued an order staying Director's suspension of a motorist's operator's license in a proceeding under § 302.535, RSMo 1994. *Id.* at 839. Director thereupon sought a writ of prohibition barring the trial court from enforcing the stay. *Id.*

The motorist in *Gabbert* argued in the trial court that the first sentence of subsection 2 of § 302.535 (quoted earlier in this opinion), which had been held in *King* to forbid a trial court from issuing a stay, "is a violation of the separation of powers doctrine." *Gabbert,* 925 S.W.2d at 839. However, the Supreme Court in *Gabbert* did not reach the constitutional question because, said the court, the motorist "has not shown any entitlement to a stay, regardless of the power of the trial court to issue one." *Id.*

In the instant proceeding, Respondent maintains: "The [General Assembly] can neither add to or subtract from the constitutional powers of the court." Respondent reads *Gabbert* as indicating "that the constitutional issue of separation of powers does exist upon a proper showing of entitlement for a stay order." According to Respondent, Driver "alleged the necessary elements for the establishment of a preliminary stay."

Inasmuch as Respondent appears to challenge the constitutionality of the first sentence of subsection 2 of § 302.535, this court must examine its jurisdiction to hear and determine this prohibition proceeding.

■ Had this case reached this court by appeal, and had a constitutional challenge to the first sentence of subsection 2 of § 302.535 been properly preserved and presented for appellate review, this court would have had to transfer the case to the Supreme Court of Missouri because Mo. Const., Art. V, § 3 (1945, as amended) confers exclusive appellate jurisdiction on that court in all cases involving the validity of a statute of this state. *State ex rel. State Highway Commission v. Paul,* 368 S.W.2d 419, 421[1] (Mo. banc 1963).

■ However, this case did not reach this court by appeal. As reported earlier in this opinion, Director initiated this proceeding in this court by filing a petition for a writ of prohibition. This court has jurisdiction under Mo. Const., Art. V, § 4 (1945, as amended) to issue remedial writs in appropriate instances within this court's territorial jurisdiction even though issues within the exclusive *appellate* jurisdiction of the Supreme Court may be raised. *State ex rel. Coffman v. Crain,* 308 S.W.2d 451, 454[7] (Mo.App.1958).

■ As did the Supreme Court in *Gabbert,* this court shall begin its adjudication of this case by examining the record to determine whether Driver showed Respondent he (Driver) was entitled to the Stay Order. On that subject, *Gabbert* cited the following passage from *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm.,* 812 F.2d 288, 290 (6th Cir.1987):

> "As with a stay of a district court order in a civil proceeding pending appeal, the determination of whether a stay of an agency's order is warranted must be based on a balancing of four factors. These factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and ■ the public interest in granting the stay. These factors are the same ones considered in evaluating the granting of a preliminary injunction." (Citations omitted.)

*Gabbert,* 925 S.W.2d at 839–40.

The record furnished this court does not indicate Driver presented any evidence to Respondent in support of Driver's prayer for the Stay Order. Consequently, this court shall examine Count II of Driver's petition to determine whether the allegations therein warranted the Stay Order.

Count II alleged: "The breath testing machine accuracy was insufficient to sup-

port the determination that [Driver] was operating a motor vehicle with a .10% BAC. Furthermore, the machine was calibrated in excess of the .10% simulator solution standards."

Attach⋅.d to Driver's petition was a copy of a "DATAMASTER MAINTENANCE REPORT" showing that an instrument bearing serial number 950077 (inferably the device that recorded Driver's blood alcohol concentration at .108 percent by weight) was inspected October 1, 1998. Three "calibration checks" produced results of .102, .101 and .101 percent, respectively.

Additionally, according to Respondent's brief: "[T]he simulator solution has a 3% variance in addition to the calibration in excess of .100%." This court infers that averment was based on a "Certificate of Analysis" by the president of the company that supplied the solution used in testing the instrument. The certificate states, *inter alia:* "This solution will produce a vapor alcohol value of 0.100% +/-3% when heated to 34 Degrees Celsius +/-0.2 Degrees Celsius in a simulator."

As this court comprehends Respondent's brief, Respondent believes the averments in the three preceding paragraphs demonstrate a likelihood that Driver will prevail at the trial de novo. As recounted earlier, the likelihood that the party seeking the stay will prevail on the merits is the first element in the four-factor *Celebrezze* test, 812 F.2d at 290.

Director responds by emphasizing that the instrument showed Driver's blood alcohol concentration was .108 percent by weight. Consequently, argues Director,

even if (a) the instrument produced a reading .002 too high,[3] and (b) the simulator solution produced an alcohol value .003 too high, Driver's blood alcohol concentration would still have been .103 percent by weight, a level exceeding the requirement for suspending his operator's license per § 302.505.1.

Director cites the following excerpt from *Lewis v. Lohman,* 936 S.W.2d 582 (Mo. App. W.D.1996), where an Intoxilyzer 5000 breath analyzer recorded a motorist's blood alcohol concentration at .10 percent:

> "The machine was operating within the allowed tolerance for that model when it produced the result of .10% blood alcohol content. Section 302.505, RSMo 1994, requires that a person's blood alcohol content be .10% or more to suspend or revoke the person's license for driving while intoxicated. It does not require the test result to pass the threshold alcohol limit of .10% within the .005% margin of error."

*Id.* at 585[9].

Therefore, insists Director, the allegations of Count II of Driver's petition did not demonstrate a likelihood that he will prevail at the trial de novo.[4]

This court agrees. Accordingly, this court holds Driver failed to satisfy the first element of the *Celebrezze* test, 812 F.2d at 290.

As to the second element of the *Celebrezze* test, Count II of Driver's petition pled that Driver is employed and is required to drive and could lose his employment during the pendency of the suspension while awaiting trial de novo.

3. Director points out that 19 CSR 25–30.031(7)(C) and Department of Health Form 6 permit a tolerance between .095 percent and .105 percent inclusive. The "calibration checks" in the instant case (.102, .101 and .101 percent, respectively) were well within the tolerance range.

4. Respondent's brief asserts Driver "will produce expert testimony from a chemist that he was in the absorption stage at the time of the breath test result, which would produce a

higher test result at the time of the test than at the time of operation of the motor vehicle." No such averment appears in Count II of Driver's petition, and the record is bare of any indication that at the time Respondent issued the Stay Order, Respondent knew Driver intended to present such testimony (if indeed Driver then harbored that intent). Consequently, this court disregards the averment about the chemist in Respondent's brief.

Therefore, asserted Count II, Driver would be irreparably harmed absent a Stay Order.

In addition to the first sentence of subsection 2 of § 302.535 (quoted earlier in this opinion), there are two additional sentences in that subsection. They read:

"[U]pon the filing of such petition [for trial de novo], a restricted driving privilege for the limited purpose of driving in connection with the petitioner's business, occupation, employment, or formal program of secondary, postsecondary or higher education shall be issued by the department if the person's driving record shows no prior alcohol related enforcement contact during the immediately preceding five years. Such limited driving privilege shall terminate on the date of the disposition of the petition for trial de novo."

Attached to Driver's petition was a document denominated "Missouri Driver's History" purporting to be Driver's record of convictions arising from operation of motor vehicles since June 6, 1989, together with the points assessed against his motor vehicle operator's license for those convictions. The document shows no alcohol related enforcement contact other than the incident that produced the suspension in issue here. Consequently, without further study it appears Driver is eligible for the "restricted driving privilege" described in the above-quoted passage from subsection 2 of § 302.535.

However, another statute—§ 302.525.2(1), RSMo 1994—imposes a limitation on § 302.535.2. Section 302.525.2(1), RSMo 1994, reads:

"If the person's driving record shows no prior alcohol related enforcement contacts during the immediately preceding five years, the period of suspension shall be thirty days after the effective date of suspension, followed by a sixty-day period of restricted driving privilege issued by the director of revenue for the limited purpose of driving in connection with the person's business, occupation, or employment, and to and from an alcohol education or treatment program. The restricted driving privilege shall not be issued until he or she has filed proof of financial responsibility with the department of revenue, in accordance with chapter 303, RSMo, and is otherwise eligible. *In no case shall restricted driving privileges be issued pursuant to this section or section 302.535 until the person has completed the first thirty days of a suspension under this section*[.]" (Emphasis added.)

The italicized sentence in § 302.525.2(1), quoted above, was added by an amendment that took effect July 1, 1992.[5] In *State ex rel. Director of Revenue v. McHenry,* 861 S.W.2d 562 (Mo. banc 1993), the Supreme Court of Missouri explained the relationship between § 302.525.2(1), RSMo 1994, and § 302.535.2 thus:

"[T]he [July 1, 1992] amendment to § 302.525[.2(1)] is not in conflict with § 302.535[.2], but by its clear terms limits it. The legislature has clearly expressed its intention that all persons found in a final order to fail the blood alcohol test be suspended from driving for thirty days whether or not they pursue a trial de novo in the circuit court pursuant to § 302.535. As a matter of law, the circuit court has no jurisdiction to order otherwise."

*Id.* at 564[1].

It is thus clear that § 302.525.2(1), RSMo 1994, renders Driver ineligible for the restricted driving privilege described in § 302.535.2 until he completes the first thirty days of his suspension. Therefore if, as pled in Count II of Driver's petition, he could lose his job unless he is allowed to drive while awaiting trial de novo, he satisfies the second element of the *Celebrezze*

---

**5.** Director refers to the italicized sentence as the thirty-day "hard walk" provision of § 302.525.2(1), RSMo 1994.

test, 812 F.2d at 290, as there is a likelihood that he will be irreparably harmed absent a Stay Order.

As to the third element of the *Celebrezze* test, Count II of Driver's petition proclaimed no one would be harmed by the Stay Order.

Apparently, the only information available to Respondent on that issue when Respondent issued the Stay Order was the record of Driver's convictions and points referred to earlier. The record shows four convictions for speeding and one for "stop sign" since June 6, 1989. While that record is not dreadful, it hardly guarantees no harm to others if Driver received carte blanche to drive while awaiting trial de novo. This court holds Driver failed to satisfy the third element of the *Celebrezze* test, 812 F.2d at 290.

The final element of the *Celebrezze* test is the public interest in granting a stay. The only averment on that subject in Count II of Driver's petition was that the public interest "would best be served by allowing [Driver] to continue in his livelihood" pending trial de novo.

This court is convinced that the public interest will be better served if motorists realize that once their licenses to drive are suspended under § 302.505, they will be ineligible for restricted driving privileges until they complete the first thirty days of their suspensions. The General Assembly of Missouri inferably concluded that such knowledge would deter drunken driving when it enacted the July 1, 1992, amendment to § 302.525.2(1), discussed earlier. This court therefore holds Driver failed to satisfy the final element of the *Celebrezze* test, 812 F.2d at 290.

Balancing the four elements of the *Celebrezze* test, this court concludes Driver failed to demonstrate entitlement to the Stay Order. Consequently, this court—as did the Supreme Court in *Gabbert*, 925 S.W.2d 838—does not reach the constitutional issue raised by Respondent.

Order

Pursuant to Rule 84.24(*l*), Missouri Rules of Civil Procedure (1999), this court orders that a peremptory writ in prohibition be issued commanding Respondent to vacate the Stay Order.

PREWITT, P.J., and PARRISH, J., concur.