[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR STAY (DOCKET ENTRY NO. 101)
CT Page 7671
In the underlying case, the plaintiff, City of Bridgeport, appeals the decision of the Department of Social Services (DSS) As a result of an audit of Bridgeport's expenditures for its General Assistance Program for the period from June 1, 1991 through June 30, 1992, the DSS found that Bridgeport owed the State of Connecticut $1,121,184.65 (Return of Record [ROR], Volume I, Item 1, pp. 1-2.) On May 18, 1998, Bridgeport requested an administrative hearing to contest certain aspects of the amended audit report issued on April 20, 1998. (ROR, Volume I, p. 1.) Bridgeport filed a motion to dismiss contending that the hearing officer had no jurisdiction over the matter because the hearing was not scheduled within thirty days of the request for a hearing and the DSS did not conduct the audit within one year of fiscal year 1991-92 or within a reasonable time. (ROR, Volume I, Item 1, p. 1.)
A fair hearing was held on June 23, 1999, and the hearing officer found that the audit was valid despite the DSS failure to conduct the audit within a year of fiscal year 1991-92. (ROR, Volume I, Item 1, p. 2.) The hearing officer determined that the requirement that the DSS "annually audit" a municipality prescribes the period covered by the audit rather than limiting the time in which to complete an audit. (ROR, Volume I, Item 1, p. 2.) The hearing officer also found that Bridgeport had waived its right to a hearing within thirty days of its request because Bridgeport agreed to continuances and participated in settlement discussions with the DSS. (ROR, Volume I, Item 1, p. 2.) The hearing officer reduced the amount Bridgeport owed under the audit by $448.00 and found that the total owed by Bridgeport was $1,120,736.65. (ROR, Volume I, Item 1, p. 5.) Bridgeport appeals the decision pursuant to General Statutes § 4-183.
On November 27, 2000, the Office of Policy and Management (OPM) notified the DSS that, pursuant to Public Acts ))-192, [00-192], § 29[1], the DSS was authorized to reduce amounts due to a municipality from the Mashantucket Pequot and Mohegan Fund by any amount the municipality owes the state and which has not been received by the state as of July 1, 2000. The amount due from Bridgeport to the state was listed as $2,064,608.07, which includes the disputed amount of $1,120,736.65. Bridgeport filed a motion to stay pending the outcome of the appeal pursuant to General Statutes § 4-183(f).
Bridgeport filed a motion for stay to preven the DSS from reducing the amounts due to Bridgeport from the Mashantucket Pequot and Mohegan Fund by the amount owed to the state from Bridgeport, pending an outcome on CT Page 7672 the merits of the appeal. Bridgeport argues that the court should apply the "balancing of the equities test" in determining whether to grant the stay pending the outcome of the appeal. Bridgeport argues that the plain language of Public Acts 00-192, § 29 requires the court to grant the motion for stay.
The DSS argues that the court can only grant the stay if Bridgeport satisfies the four elements in the federal standard. The DSS argues that Bridgeport has not satisfied the elements of the federal standard applicable to motions to stay, therefore, its motion must be denied.
General Statutes § 4-183 (f) provides, in pertinent part, that "[a]n application for a stay may be made . . . to the court. . . . A stay, if granted, shall be on appropriate terms." The Supreme Court has observed that "[t]he provision for `a stay upon appropriate terms' give the court broad authority to fashion appropriate relief to protect the interests of all those involved during the pendency of an administrative appeal." Griffin Hospital v. Commission on Hospitals, 196 Conn. 451, 455,493 A.2d 229 (1985). In Griffin Hospital, the Supreme Court approved the use of the "balancing of the equities test". Id., 459-60. The "balancing of the equities test" is defined as "a test which weighs the equities and balances the harm that may be suffered by the [a]ppellant as a result of the enforcement of the [a]gency order, or the decision, pending the appeal, against the public harm that may result from the delaying the effectiveness of the [o]rder or [d]ecision." Id., 456. "Among the `equities' to be placed on the scales, of course, are the general equitable considerations which are involved in the issuance of a temporary injunction to preserve the status quo pendente lite. These include the concerns specified in the federal standard, which appear to have been derived from the same equity source." Id. "The federal standard focuses upon: (1) the likelihood that the appellant will prevail; (2) the irreparability of the injury to be suffered from immediate implementation of the agency order; (3) the effect of the stay upon other parties to the proceeding; and (4) the public interest involved." Id.
Bridgeport argues that Griffin Hospital v. Commission on Hospitals, supra, 196 Conn. 451, does not strictly require the court to consider the federal standard. In that case, however, the Supreme Court specifically emphasized that "the particular factors specified in the federal standardundoubtedly warrant consideration by the trial court in the balancing process." (Emphasis added.) Id., 457. Accordingly, it is apparent that the court should consider the federal standard in determining whether the stay should be granted.
 A
CT Page 7673 Likelihood of Success on the Merits of the Appeal
The first element in the federal standard is the likelihood that the party seeking a stay will prevail on the merits of the appeal. Bridgeport has not argued that it will succeed on the merits of the appeal because Bridgeport contends that the court does not have to consider the elements in the federal standard.
"In the consideration of applications for stay orders, the applicant must make a strong showing of the probability of succeeding on the merits of its appeal, of the probability of irreparable injury, and of the probability that the stay will not be harmful to the public interest or to other parties." Waterbury Hospital v. Commission on Hospitals HealthCare, 30 Conn. Sup. 352, 354-55, 316 A.2d 787 (1974). "In order for the reviewing court to adequately balance these factors, the party seeking a stay must address each of the factors regardless of its strength, and provide us with facts and affidavits supporting these assertions." Stateof Ohio ex rel. Celebrezze v. Nuclear Regulatory Commission,812 F.2d 288, 290 (6th Cir. 1987). It appears to the court that Bridgeport has not demonstrated that it is likely to succeed on the merits of the appeal because Bridgeport has not make a strong showing that the hearing officer's decision was not supported by the record. At this stage of the proceedings, there is no evidence that suggests the DSS hearing officer acted unreasonably, arbitrarily, capriciously, or in abuse of her discretion.
 B Whether Enforcement of the Agency Order will Result in IrreparableHarm
The second element in the federal standard is whether Bridgeport will suffer irreparable harm from the implementation of the agency's order. Bridgeport argues that allowing the DSS to recoup money owed to the DSS from the Mashantucket Pequot and Mohegan Fund will reduce the municipal budget and will obviously harm Bridgeport's already tight municipal budget, but Bridgeport does not argue that the harm is irreparable. The DSS correctly argues that Bridgeport can recover its entire grant should the court find that the DSS is not entitled to reimbursement from Bridgeport.
"[M]ere injuries in terms of money, time and energy necessarily expended in absence of a stay do not form a basis for a conclusion of irreparable injury." Waterbury Hospital v. Commission on Hospitals andHealthcare, 30 Conn. Sup. 352, 355, 316 A.2d 787 (1974). "To demonstrate irreparable harm the moving party must identify a noncompensable injury CT Page 7674 for which there is no legal measure of damages, or none that can be determined with a sufficient degree of certainty. . . . Thus, monetary losses will generally not be considered irreparable." (Citations omitted; internal quotation marks omitted.) Michigan Bell Telephone Co.v. MFS Intelenet of Michigan, Inc., 16 F. Sup.2d 828 (W.D.Mich. 1998). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Virginia PetroleumJobbers Association v. Federal Power Commission, 259 F.2d 921 (D.C. Cir. 1958). The court finds, therefore, that Bridgeport has failed to sustain its burden to show that it will suffer irreparable harm if the court denies the stay.
 C Effect of the Stay on Other Parties to the Proceeding
The third element in the federal standard is the effect of the stay on other parties to the proceeding. The DSS argues that it may not be able to withdraw the funds from the Mashantucket Pequot and Mohegan Fund next year unless the legislature authorizes it to do so. The DSS claims that if the court rules in its favor on the merits it will have to pursue reimbursement from the state through costly litigation. The court concludes that Bridgeport has failed to sustain its burden to show that the DSS would not be harmed if the stay was granted.
 D Effect of the Stay on the Public Interest
The final element in the federal standard is the public interest involved in granting the stay. The DSS claims that the harm to the public if the DSS must release funds due to the state would be irreparable. If the stay is granted, the DSS will presumably lose funds that could be made available to other individuals or towns seeking assistance from the DSS. Bridgeport does not argue, or present any evidence, which shows that the public interest will not be harmed should the court grant the stay. Accordingly, the court finds that Bridgeport has not sustained its burden to show that granting the stay would not affect the public interest.
 CONCLUSION
Based on the foregoing analysis, Bridgeport's motion for stay should be denied. The "balancing of the equities test" does not weigh in favor of granting the stay. Bridgeport has failed to sustain its burden of proof in its motion for stay because it has not made a strong showing that it CT Page 7675 will prevail on the merits of the appeal or that it will suffer irreparable harm if the stay is denied. Therefore, the court denies the motion for stay because DSS is entitled to the money owed by Bridgeport until it is shown that the decision by the DSS was arbitrary, capricious, illegal, or in abuse of its discretion. Furthermore, Bridgeport's ability to appeal this action is not in any way affected by the DSS withholding these funds.
SKOLNICK, J.