**The SINDIA EXPEDITION, INC., Appellant,**

v.

**The WRECKED AND ABANDONED VESSEL, KNOWN AS "THE SINDIA," which ran aground off Ocean City, New Jersey, her tackle, armament, apparel and cargo located within 3,000 yards of a point at coordinates 74° 35′ 12″ West Longitude and 39° 16′ 00″ North Latitude.**

No. 89–5485.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1989.
Decided Feb. 8, 1990.

Peter E. Hess (argued), Wilmington, Del., David Paul Horan, Key West, Fla., for appellant.

John M. Van Dalen (argued at Court Request), Deputy Atty. Gen., State of N.J., Trenton, N.J., for State of N.J.

Before HUTCHINSON, COWEN, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In 1901, the British-flagged ship, the Sindia, with her four towering masts, successfully and happily navigated the high seas from Shanghai, China to the seacoast of New Jersey. It is believed that when the 329 foot steel-hulled barque proudly sailed into the waters off New Jersey, her cargo hold swelled with fine porcelain, carved ivory, silk, camphor oil, and bamboo matting. Much of her exotic goods and antiquities is believed to have been brought aboard by British and American soldiers from plundering following the Chinese Boxer Rebellion.

When the ship was nearly within sight of her destination, apparently the crew began to prematurely celebrate their arrival. On December 15, 1901, the Sindia's sailing days sadly suffered a jarring end when she ran aground just off the beach of Ocean City, New Jersey. Today, the Sindia's tillerpost, still protruding from her steel hull and plainly visible in the relatively shallow waters in which she lies, marks her watery grave.[1]

The Sindia Expedition (Expedition), a maritime treasure hunter incorporated in New Jersey, commenced this *in rem* admiralty action in the United States District Court for the District of New Jersey seeking either, or both, title to the vessel and a liberal salvage award.[2] Attempts to salvage the ship have continued sporadically since her unfortunate demise. Other hopefuls intervened. The Seaview Beach Condominium Association, Inc. (Seaview) and McHale, Kissane & Pennypacker (McHale) intervened on the basis of their claims to land on which the Sindia is embedded. Noreaster Marine Salvage L.P. (Noreaster) intervened as a competing salvor.

1. The district court, most likely inadvertently, described the ship as being 3000 yards off the coast of New Jersey. Judging by the pictures in the record, the Sindia is much closer, perhaps 30 yards. As requested by the appellant, we take judicial notice of the ship *not* being located 3000 yards off the coast of New Jersey. We leave the determination of the vessel's exact location, if relevant, to the district court.

2. The district court had subject matter jurisdiction under 28 U.S.C. § 1333. This court exercised appellate jurisdiction under 28 U.S.C. § 1291.

Although the Expedition's complaint contains a request that all "governmental agencies be enjoined from interfering with the Plaintiff's title, possession and property," the Expedition did not specifically name any state, state agency, or state official in its complaint. The State of New Jersey (the State), however, informed the district court by letter that it claimed ownership to the wreck of the Sindia and her cargo and that it would not waive its Eleventh Amendment immunity by appearing in the litigation.

Thereafter, McHale filed a motion to dismiss the action contending that the district court lacked jurisdiction, that service of process was defective and that the Expedition had failed to join the State of New Jersey, an indispensable party. The court, 710 F.Supp. 1020, granted McHale's motion on the ground that the State had colorable title and, therefore, the Expedition had failed to join an indispensable party as required under Federal Rule of Civil Procedure 19(b). The Expedition appeals. We reverse and remand.

### I.

On appeal, the Expedition vigorously contends that New Jersey does not have colorable title to the Sindia and, therefore, is not an indispensable party to the action. Upon request of this court and reserving its right to asserts its rights to sovereign immunity, the State submitted a memorandum statement and participated at oral argument. In its statement, the State informs us that its claim to colorable title of the wrecked vessel rests on a number of bases, including New Jersey's abandoned property law, N.J.S.A. 2A:37–13, New Jer-

sey common law, the Federal Submerged Lands Act of 1953, 43 U.S.C. § 1311(a), and finally an agreement reached with the Expedition in 1988 granting the Expedition salvage rights.[3] The agreement, however, provides that it will terminate upon final order of the district court or on appeal in the Expedition's admiralty action. Although it asserts that the district court lacks jurisdiction to decide New Jersey's claims because of the Eleventh Amendment, the State suggests that the district court could exercise jurisdiction over all the non-state parties before it so that the primacy of one salvage group versus another could be decided, leaving to the State the option of protecting its rights through negotiations or contract.

Rather than focus on the question, as did the district court, of whether New Jersey has a colorable claim of title to the Sindia so as to make New Jersey an indispensable party, we believe that there is a more direct and pragmatic resolution of this appeal. Relying on the opinion of the Supreme Court in its landmark decision in *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), we prefer to assume for the purpose of our discussion that the State has colorable title, as held by the district court here, and meet the dominant issue whether the Eleventh Amendment deprives the court of jurisdiction because the State, though a non-party, asserts an interest in the *res*. We therefore consider whether the Expedition's complaint *in rem* is barred by the Eleventh Amendment of the Constitution with the consequential effect that this would per se render the State an indispensable party to the action.

---

**3.** Our letter requesting the State to appear at oral argument also asked the State to respond to the following questions:

(1) whether the agreement between the State and The Sindia Expedition, Inc. entitles The Sindia Expedition, Inc. to take possession of the contents of the sunken vessel and whether that agreement affects the State's claim to eleventh amendment immunity; (2) does the district court have jurisdiction to inquire into the validity of the State's claim to title in determining whether the State has eleventh amendment immunity from suit in the district

court; (3) if the court were to conclude that the Abandoned Shipwreck Act of 1987 (which by its very terms gives to the states a property interest in abandoned or shipwrecked vessels) is not applicable because Section 7 of the Act would not apply to any vessel prior to 1987, and further that the New Jersey Escheat Statute NJS 2A:37–13, is not applicable, would the sole authority under which the State could claim a property interest in the vessel then be under the Submerged Lands Act, 43 U.S.C. § 1311(a)....

## A. The Eleventh Amendment

■ The district court did not expressly address whether the action was barred by the Eleventh Amendment but instead focused its attention on the Expedition's failure to join an indispensable party. Although New Jersey and the Expedition are satisfied that the federal court has jurisdiction over the action, we have "a special obligation" to satisfy ourselves of our own and the district court's jurisdiction, "even though the parties are prepared to concede it." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). We will, therefore, *sua sponte*, consider the effect of the Eleventh Amendment on our jurisdiction. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 658 n. 1 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989).

The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

■ Congress enacted the Eleventh Amendment to protect the sovereign immunity of the individual states. Over the years, the rule has evolved that suits of private parties seeking to impose a liability which must be met by public funds of the state treasury are barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d at 659. The States' Eleventh Amendment protection extends to actions brought under federal admiralty jurisdiction. *In re New York, No. 1*, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921). Thus, a private party may not bring an *in personam* action, even in admiralty, against an unconsenting state. *Id.*

The Court in *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), directly addressed the issue of whether an admiralty *in rem* action may be barred by the Eleventh Amendment. In *Treasure Salvors*, the plaintiffs filed an admiralty *in rem* action in federal district court seeking declaration of title to an abandoned vessel. Two Florida state officials of the Florida Division of Archives held possession of some of the artifacts of the vessel recovered from the floor of the ocean in international waters. However, neither the state agency nor the State of Florida was named as a party to the suit.

The Treasure Salvor plaintiffs requested the district court to "arrest" the artifacts held by the two named state officials. The court issued the warrant and denied the State's motion to quash. Florida appealed the arrest order claiming Eleventh Amendment immunity. The Court of Appeals for the Fifth Circuit affirmed, 621 F.2d 1340, and the Supreme Court granted certiorari. 451 U.S. 982, 101 S.Ct. 2312, 68 L.Ed.2d 838 (1981).

A plurality of the Supreme Court held that the Eleventh Amendment did not bar the warrant. Justice Stevens, for the plurality, explained that a classic admiralty *in rem* action in which the plaintiffs claim only an ownership interest in property and are not seeking personal jurisdiction over the State by seizure of the vessel is not barred by the Eleventh Amendment. *See Treasure Salvors*, 458 U.S. at 699, 102 S.Ct. at 3322. On the other hand, an admiralty action brought *in rem* solely for the purpose of giving the court jurisdiction over a damage claim against a State is barred by the Eleventh Amendment. *Id.* The reasoning behind such a bar is that the action has no connection to the typical admiralty *in rem* action, but is a calculated attempt by the plaintiff to acquire personal jurisdiction by doing an end-run around the Eleventh Amendment by seizing property. *See In re New York*, 256 U.S. 490, 501, 41 S.Ct. 588, 591 ("the proceedings ... have no element of a proceeding *in rem*").

The *Treasure Salvors* plurality held that a legitimate admiralty *in rem* action directed only to the derelict property is not barred by the Eleventh Amendment for two

reasons. First, the *in rem* arrest warrant merely seeks possession of specific property; it does not "seek any attachment of state funds and . . . impose[s] no burden on the state treasury." *Treasure Salvors,* 458 U.S. at 698, 102 S.Ct. at 3321. Second, the *Treasure Salvors* plurality implicitly endorsed the admiralty doctrine of personification under which an *in rem* action is characterized as an action against the ship not the owner.[4] Absent circumstances which suggest an illegitimate circumvention of the Eleventh Amendment, an admiralty *in rem* action in which a State claims an interest in a *res* is not an action against the State but merely *against the property.*[5] Nonetheless, the Court explained that although the district court was not barred in issuing process to secure possession of the artifacts held by the named state officials, the resolution of the case did not permit, because of the Eleventh Amendment, the determination of the State's ownership of the artifacts.

The result in *Treasure Salvors* was that, although the State of Florida claimed an interest in the property, the Court held that the *in rem* action could proceed. Curiously, the Court held that the district court could determine title to the vessel as far as non-State parties were concerned, but it could not determine the State's interest in the property without the State's consent. *Trea-sure Salvors,* 458 U.S. at 682, 698, 102 S.Ct. at 3313, 3321.

On remand, the Court of Appeals for the Fifth Circuit gave possession of the contested artifacts to Treasure Salvors although noting that "the State of Florida asserts extrajudicially a claim to own them." *Florida, Dep't of State v. Treasure Salvors, Inc.,* 689 F.2d 1254, 1256 (1982). The Fifth Circuit explained:

> Unless the State elects voluntarily to appear and to litigate ownership, the court shall enter final judgment in the usual form for *in rem* actions, decreeing Treasure Salvors to be owner of the artifacts as against all claimants except the State of Florida, but declaring expressly: "This judgment does not determine in any way whether the State of Florida is the owner of these artifacts."

*Id.*[6]

We hold that under the law of *Treasure Salvors* the Expedition's admiralty complaint *in rem* is not barred by the Eleventh Amendment. Here, the Expedition has claimed an ownership interest in the vessel under the law of finds and also seeks to enforce a lien against the ship under the laws of maritime salvage.[7] Therefore, the action is a genuine admiralty *in rem* action against the vessel and not a circuitous *in personam* action to obtain jurisdiction over the State for purposes of money damages.[8]

4. Justice White, dissenting in part, was certain that the plurality had endorsed the admiralty concept of personification. White complained:

> . . . the allowance of an *in rem* suit against arguably state-owned maritime property rests on the "personification" theory of the res— that the action runs against the *Atocha* and not the State of Florida.

*Treasure Salvors,* 458 U.S. at 710, 102 S.Ct. at 3327.

5. Through the uniquely American admiralty concept of personification, the vessel, even if engaged in piracy on the high seas, is treated as the offender, as the guilty instrument or thing to which the forfeiture attaches, without any reference whatsoever to the character or conduct of the owner who may be wholly ignorant of any misconduct. *United States v. The Brig Malek Adhel,* 43 U.S. (2 How.) 210, 233, 11 L.Ed. 239 (1844); *see also Madruga v. Superior Court,* 346 U.S. 556, 560, 74 S.Ct. 298, 300, 98 L.Ed. 290 (1954).

6. As evidenced by Justice White's dissent, the Fifth Circuit's disposition was in tune with the plurality's decision:

> [The plurality advances] that Florida's Eleventh Amendment freedom from suit is meaningfully safeguarded by not formally rejecting the State's claim to the artifacts although federal agents may seize the contested property and federal courts may adjudicate its title.

*Treasure Salvors,* supra, 458 U.S. at 703, 102 S.Ct. at 3324.

7. See generally, T. Schoenbaum, *Admiralty and Maritime Law* 512–518 (1987).

8. A maritime lien brought *in rem* is satisfied only by the sale of the vessel. The lien holder may not recover from the owner any amount beyond the value of the vessel without commencing an action *in personam.* G. Gilmore and C. Black, *The Law of Admiralty* 624 (2d ed.1975).

In addition, the Expedition did not specifically name the State or a New Jersey state agency as a party to the present action. Indeed, the action was brought solely against the vessel and no process has been served on the State. Although an action may be against a State even if it is not a named party, the *Treasure Salvors* plurality considered it significant that the State was not named. *See Treasure Salvors,* 458 U.S. at 691, 102 S.Ct. at 3318.

Finally, the record reveals that the rights to the Sindia are contested by other parties. Thus, the effect of the proceeding will be, if the Expedition is successful, to award it possession to the Sindia as against these parties and not against the State. *Cf. In re New York (I),* 256 U.S. at 500, 41 S.Ct. at 590 (whether a State is a party is to be determined "by the essential nature and effect of the proceedings, as it appears from the entire record"). We must, however, address whether New Jersey's non-record assertion of an interest in the vessel, although not a party to the proceeding, makes it an indispensable party to the Expedition's *in rem* action.

**B. Is the State an indispensable party?**

■ The district court dismissed the Expedition's action for failure to join the State as an indispensable party. Fed.R.Civ.P. 19(b). We review a district court's determination of indispensability for abuse of discretion. *Steel Valley Auth. v. Union Switch & Signal Div., American Standard, Inc.,* 809 F.2d 1006, 1010 (3d Cir. 1987), *cert. dismissed sub nom., American Standard, Inc. v. Steel Valley Auth.,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988).

Before a district court can dismiss an action for failure to join an indispensable party, the court must determine if a missing party is a "party which must be joined"

under 19(a).[9] *Abel v. American Art Analog, Inc.,* 838 F.2d 691, 695 (3d Cir.1988). If a district court failed to make an explicit 19(a) determination but dismissed an action on 19(b) grounds, the appellate court must independently analyze whether an absent party was required to be joined under 19(a). *See Steel Valley,* 809 F.2d at 1010. Because the district court failed to engage in any analysis of 19(a), we will determine if the State is a necessary party under that section.

**1. Subdivision (a)(1) of Rule 19**

When determining whether a absent person must be joined to an action, the court must consider if in the person's absence complete relief can be accorded among those already parties. Fed.R.Civ.P. 19(a)(1). The Advisory Committee Notes to Rule 19 state that subdivision (a)(1) was enacted to avoid partial or hollow relief. Professor Moore has explained that "complete relief":

> ... refers to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought. Mere theoretical considerations of disposing of the whole controversy do not warrant compulsory joinder when it appears unlikely that the absent persons could be affected. Nor is joinder necessary where, although certain forms of relief are unavailable due to a party's absence, meaningful relief can still be provided.

3A Moore's Federal Practice ¶ 19.07–1[1], at 93–98 (2d ed. 1989).

■ Under the facts of this case, a determination of possession or salvage rights amongst the intervenors and the plaintiff, without the State, would not be "hollow." As to possession or title issues among the

---

9. Rule 19(a) provides:
(a) Persons to be joined if feasible.
A person ... shall be joined as a party in the action *if*
(1) in the person's absence complete relief cannot be accorded among the parties, *or*
(2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest *or*
(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
Fed.R.Civ.P. 19.

parties under the law of finds, the court may completely determine who has superior rights.[10] *See Florida, Dep't of State v. Treasure Salvors, Inc.*, 689 F.2d 1254, 1256 (5th Cir.1982). New Jersey would not be adversely affected because the district court cannot make a determination of the State's right to or interest in the property without its consent. *Treasure Salvors*, 458 U.S. at 700, 102 S.Ct. at 3322. The possibility that a successful party may have to defend its rights to the Sindia in a subsequent suit brought by the State does not make New Jersey a necessary party to this action. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 300–301 (3d Cir.1980); *see also* 3A Moore's Federal Practice ¶ 19.07–1[1], at 93–96 (2d ed. 1989).

A complete determination can also be made as to which party before the court has salvage rights. We note that New Jersey actually *requests* the court to adjudicate the "primacy of one salvage group" so it can then negotiate a salvage agreement with the victor.[11] (New Jersey Letter Brief p. 4) *Compare* 3A Moore's Federal Practice ¶ 19.07-1[1], at 97–98 (2d ed. 1989) (joinder not necessary where meaningful relief can still be provided). The State is therefore not a required party under Rule 19(a)(1).

### 2. Subdivision (a)(2) of Rule 19

Federal Rule of Civil Procedure 19(a)(2)(i) & (ii) provides that an absent person who is subject to process and whose joinder will not deprive the court of jurisdiction over the subject matter must be joined to an action if:

the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence:

(i) may as a practical matter impair or impede the person's ability to protect that interest *or*

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

■ Subdivision (a)(2)(i) of Rule 19 clearly does not apply to this case because the State may always protect its interest in the Sindia by voluntarily appearing and asserting its rights. The State is manifestly unconcerned about the effect of the litigation on its interest in the Sindia. In its letter brief and at oral argument to this court, New Jersey was wholly unconcerned with any adjudication in its absence and actually pressed the court to remand the case because it believed the adjudication of the rights of the parties of record *would not* harm New Jersey's interest.

■ Subdivision (a)(2)(ii) is primarily aimed at protecting parties before the court. Moore's Federal Practice ¶ 19.07-[2.2], at 111 (2d ed.1989). The subdivision was enacted to protect parties from a "substantial" risk of multiple or inconsistent obligations, not merely a possible risk. The subdivision also helps to protect defendants from "needless" multiple litigation. *Schutten v. Shell Oil Co.*, 421 F.2d 869 (5th Cir.1970), *cited in* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1602. A court considering 19(a)(2)(ii) must balance the plaintiff's choice of forum against the policies of judicial economy and fairness to other parties. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 302 (3d Cir.1980).

On balance, we find that 19(a)(2)(ii) does not apply to this case. The Expedition brought this admiralty *in rem* action in federal court because federal courts have exclusive jurisdiction over this form of action. *Madruga v. Superior Court*, 346

---

**10.** We note that the record shows the district court has already entered a default judgment in favor of the Sindia Expedition against all persons, concerns or firms claiming any interest in the Sindia with the exception of the State, Seaview, Noreaster, and McHale.

**11.** New Jersey has a contract with the Expedition which would allow the Expedition to sal-

vage the Sindia if the Expedition prevails over the parties who intervened. New Jersey has also represented to the court that it is "willing and able" to negotiate an agreement with any new salvage group should the district court make a different custody award on remand.

U.S. 556, 560, 74 S.Ct. 298, 300, 98 L.Ed. 290 (1954). Therefore, the Expedition does not have an alternative forum to pursue its action and avoid "needless" multiple litigation.

As noted, New Jersey is the only potential non-party who could assert an interest in the wreck once this litigation is concluded. *See supra* note 10. The victorious party may have to face the State in another forum at another time. A decision in this case cannot impose any "obligation" as described in 19(a)(2)(ii) in the event of future litigation with the State. *See Boone v. General Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir.1982) (threat of inconsistent *obligations*, not the possibility of multiple litigation which determines Rule 19 considerations); *see also Field v. Volkswagenwerk AG*, 626 F.2d 293, 300–302 (3d Cir.1980).

We are convinced that upon the conclusion of this litigation no present party faces a "substantial risk" of incurring multiple or inconsistent obligations due to New Jersey's absence. The district court will decide who, amongst the parties of record, has superior rights to the vessel. No "substantial risk" exists that a present party will pay, as a consequence of this suit, additional money *to* the State or any other non-party. The risk of any present party incurring inconsistent or multiple obligations due to the State's absence is, indeed, remote. New Jersey is also fully able, and it has so expressed itself, to protect its interests. Therefore, subdivision (a)(2) of Rule 19, in addition to subdivision (a)(1), is not applicable to this case. This does not end the matter, however, and we turn to the district court's order dismissing the action.

## II.

The district court premised its dismissal order on Rule 19(b) of the Federal Rules of Civil Procedure. Subdivision (b) of Rule 19 provides in relevant part:

> *If a person as described in subdivision (a)(1)–(2)* hereof cannot be made a party, the court shall determine whether in equity or in good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. (Emphasis supplied).

As discussed above, New Jersey was *not* a person described in Rule 19 subdivisions (a)(1) & (2). Therefore, the district court erred in considering 19(b) and, consequently, in dismissing the Expedition's case on 19(b) grounds.[12]

## III.

Accordingly, the district court's order dismissing the Expedition's complaint will be reversed and the case remanded for proceedings consistent with this opinion.

The Expedition (appellant) will bear its own costs.

---

**12.** Because it is not at issue in this case and would not affect the result, we do not decide the issue of whether a state seeking to bar an *in rem* suit on Eleventh Amendment grounds must merely assert a claim or must advance a "colorable" claim to the *res. Marx v. Government of Guam*, 866 F.2d 294, 299 (9th Cir.1989) (state needs to assert "colorable claim"); *contra Fitzgerald v. Unidentified Wrecked & Abandoned Vessel*, 866 F.2d 16, 18 (1st Cir.1989) (dismissing action because it was directed against the state and not state officials) ("Once it is determined that the *in rem* action is directed against the Commonwealth itself, ... a federal court need not reach the colorability of the Commonwealth's claim."). *See also Treasure Salvors*, 458 U.S. at 700–02, 102 S.Ct. at 3322–24.