## MICHIGAN COALITION OF RADIOACTIVE MATERIALS USERS, Plaintiff,

v.

Jerry GRIEPENTROG, Director of the Nevada Department of Human Resources, Christine Gregoire, Director of the Washington Department of Ecology, and John B. Pate, Chairperson of the South Carolina Board of Health and Environmental Control, Defendants.

No. 5:90–CV–94.

United States District Court,
W.D. Michigan, S.D.

June 18, 1991.

On Motion For Stay July 10, 1991.

Max R. Hoffman, Jr., Richard C. Kraus, Charles R. Toy, Farhat, Story & Kraus, P.C., East Lansing, Mich., Charles J. Cooper, David R. Lewis, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Michael S. Green, House Republican Programs & Policies, Lansing, Mich., for Michigan Coalition of Radioactive Materials Users, Inc.

Ralph M. Reisinger, David J. Bloss, Roberts, Betz & Bloss, P.C., Grand Rapids, Mich., Nancy Angres, Chief Deputy Atty., Atty. Gen.'s Office, Dept. of Human Resources, Carson City, Nev., for Jerry Griepentrog.

Ralph M. Reisinger, David J. Bloss, Roberts, Betz & Bloss, P.C., Grand Rapids, Mich., Allen T. Miller, Jr., Asst. Atty. Gen., Atty. Gen.'s Office, Ecology Div., Olympia, Wash., for Christine Gregoire.

Ralph M. Reisinger, David J. Bloss, Roberts, Betz & Bloss, P.C., Grand Rapids, Mich., Walton J. McLeod, III, Samuel L. Finklea, III, Dept. of Health & Environmental Control, Office of Gen. Counsel, James Patrick Hudson, Deputy Atty. Gen., Atty. Gen.'s Office, Columbia, S.C., for John B. Pate.

## OPINION

ROBERT HOLMES BELL, District Judge.

This is an action for declaratory and injunctive relief. Plaintiff, the Michigan Coalition of Radioactive Materials Users, Inc. (MICHRAD), is an association representing generators of low-level radioactive waste in Michigan. Defendant Griepentrog is director of the Nevada Department of Human Resources, Defendant Gregoire is director of the Washington Department of Ecology, and Defendant Pate is chairperson of the South Carolina Board of Health and Environmental Control.

The only active low-level radioactive waste disposal sites in the nation are located in Nevada, South Carolina and Washington (the "sited states"). Defendants oversee these three facilities. Low-level radioactive waste generated in Michigan had been disposed of at defendants' facilities until November 10, 1990, when defendants denied access to waste generated in Michigan pursuant to section 5(e) of the Low-Level Radioactive Waste Policy Amendments Act of 1985 ("the Act"), 42 U.S.C. § 2021b *et seq.* Plaintiff contests that denial.

This matter is currently before the court on the parties' cross-motions for summary judgment. MICHRAD has moved for partial summary judgment as to Counts I–IV of its complaint, claiming that defendants do not have a legal basis for denying access to the waste disposal facilities prior to January 1, 1993, because Michigan has complied with all milestones under the 1985 Act. Defendants move for summary judgment and dismissal of the entire complaint, claiming they are entitled to judgment because plaintiff is not a real party in interest; the states of Michigan, Nevada, South Carolina and Washington are indispensable parties; defendants are entitled to Eleventh Amendment Immunity; plaintiff has failed to exhaust administrative remedies; and they have statutory authority to deny access to a non-complying state.

## Factual Background

In 1980, in response to the threatened closure of the only three low-level radioactive waste disposal sites in the nation, Congress passed the Low–Level Radioactive Waste Policy Act, Pub.L. No. 96–573, 94 Stat. 3347 (the "1980 Act"), 42 U.S.C. § 2021b–2021d. The 1980 Act established that each state is responsible for providing for the disposal of low-level radioactive waste generated within its borders, 42 U.S.C. § 2021c(a)(1), and declared a federal policy that low-level waste can be most safely and efficiently managed on a regional basis. 42 U.S.C. § 2021d(a)(1).

As an incentive for the development of regional disposal facilities the 1980 Act provided that any regional compact would be permitted, after January 1, 1986, to restrict use of the compact's regional disposal facility to the disposal of low-level waste generated within the compact region. As the deadline approached it became apparent that new regional disposal sites would not be developed by January 1, 1986. If the sited states were allowed to ban waste generated outside of their compacts, the non-sited states would have no place to dispose of their waste. In order to avoid a potential crisis in low-level radioactive waste disposal, Congress, with substantial input from the National Governors Association, passed the Low–Level Radioactive Waste Policy Amendments Act of 1985 (the "1985 Act" or the "Act"). 42 U.S.C. § 2021b et seq.

The 1985 Act also provides incentives and penalties to encourage non-sited states and compacts to develop disposal capacity by December 31, 1992. 42 U.S.C. § 2021e(d) & (e). Section 5 of the 1985 Act assures that a certain amount of disposal capacity in the sited states will be available to the non-sited states and compacts during the transition period of January 1, 1986 to December 31, 1992. 42 U.S.C. § 2021e(a).

The 1985 Act allows the sited states to deny access if the states do not meet the milestones outlined Section 5(e). Michigan was selected as the host state for the Midwest Compact. Michigan has not yet designated a regional disposal site. In the summer of 1990, the sited states sent identical letters to the governor of Michigan stating that Michigan's adoption of overly restrictive site selection criteria, taken in conjunction with other actions "makes a prima facie case that Michigan will not honor its host state commitment." Accordingly, they gave notice that as of November 10, 1990, they would deny Michigan waste generators access to their disposal sites unless Michigan designated a disposal site or revised their siting criteria bill and provided evidence of good faith in addressing the concerns raised by the sited states.

As a result of defendants' refusal to accept low-level radioactive waste from Michigan generators, members of plaintiff MICHRAD have and will be required to retain and store low-level radioactive waste on site and to expend substantial sums of money and personnel time to provide for safe interim storage. Plaintiff brought this action seeking declaratory relief and an injunction prohibiting defendants from denying access.

## Analysis

■ In addressing the parties' cross-motions for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–53, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing and substantive law. *Id.* A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552. *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989).

Plaintiff's motion addresses its right to access to the disposal sites under the 1985 Act. Defendants' motion claims a statutory right to deny access under the Act, and also raises procedural and jurisdictional bars to plaintiff's complaint. Before addressing the substantive arguments under the Act, the Court must first evaluate the threshold issues raised by defendants.

## A. *Real Party in Interest*

■ In their brief in support of motion for summary judgment defendants contend that Michigan is *the* real party in interest under F.R.Civ.P. 17, that plaintiff is attempting to act on behalf of the State of Michigan, and that the action should be dismissed for failure to prosecute in the name of the real party in interest. In their reply brief defendants refer to Michigan as *a* real party in interest and disavow any claim that plaintiff was an improper party.

In case there is any doubt as to defendants' position, the Court will address the issue of whether plaintiff is a real party in interest who can properly prosecute this action.

Plaintiff complains that defendants have denied low-level radioactive waste generators in Michigan access to their disposal facilities. The letters sent by defendants to Governor Blanchard of the State of Michigan giving notice that access to disposal facilities "will be denied to all low-level radioactive waste generators in the State of Michigan" support plaintiff's assertion that defendants' denials of access were directed at Michigan waste generators.

Moreover, the 1985 Act which governs access to disposal sites, does not only address itself to the states. It has a significant and direct impact on waste generators as well. The 1985 Act provides that between January 1, 1986 and December 31, 1992, the sited states shall make disposal capacity available for low-level radioactive waste generated by nuclear power reactors and any other source. 42 U.S.C. § 2021e(a)(1) & (2).

The Act recognizes that it is generators and handlers who will dispose of waste, and not the state itself. Accordingly, in 42 U.S.C. § 2021e(f)(2)(B), the sited states are authorized to deny access to disposal capacity to "any generator or intermediate handler" who fails to provide required information.

The penalties under the Act include a surcharge to be imposed on "any generator of low-level radioactive waste within such region" and denial of access to "any low-level radioactive waste generated within such region." 42 U.S.C. § 2021e(e)(2). Thus, through January 1, 1993, although the milestone incentives are paid to the states, 42 U.S.C. § 2021e(d)(2), all the penalties for a state's failure to comply with the milestones are borne by the generators, not the states.

Plaintiff, an association of waste generators in Michigan, has a significant interest in pursuing the rights of its members under the 1985 Act to dispose of low-level radioactive waste at defendants' waste disposal facilities. This action is properly prosecuted by plaintiff, a real party in interest under Rule 17.

## B. *Indispensable Party*

■ Defendants contend that the State of Michigan is a real party in interest and that it is an indispensable party under F.R.Civ.P. 19. In assessing a joinder question under Rule 19, the Court must first

determine whether the non-party should be joined in the action if possible. *Local 670, United Rubber, etc. v. International Union, United Rubber, etc. Workers,* 822 F.2d 613, 618 (6th Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988). "The rule is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case." *Id.*

Defendants contend that because the actions of the State of Michigan are directly at issue in this case and the Court is being requested to evaluate Michigan's compliance with the Act, the Court should not proceed without the State of Michigan being made a party. The fact that numerous issues in this case pertain to the actions of the State of Michigan does not by itself make Michigan an indispensable party.

Rule 19(a)(1) provides that a non-party is a necessary party and should be joined if in his absence complete relief cannot be accorded among those already parties. Plaintiff is seeking a declaratory judgment and an injunction prohibiting defendants from denying access to the disposal facilities. Complete relief can be accorded to plaintiff without joinder of the State of Michigan.

Defendants contend they will not be afforded complete relief because they could be subject to a substantial risk of facing multiple litigation and incurring inconsistent obligations should the State of Michigan file suit. Defendants' fear of future litigation with the State of Michigan does not make joinder necessary under Rule 19(a)(1). The focus of Rule 19(a)(1) is on "relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." *Sales v. Marshall,* 873 F.2d 115, 121 (6th Cir.1989). "Complete relief" under Rule 19(a)(1) "refers to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." 3A Moore's Federal Practice ¶ 19.07–1[1], at 93–96 (2d ed. 1989) (quoted in *Sindia Expedition v. Wrecked & Abandoned Vessel,* 895 F.2d 116, 121 (3rd Cir.1990)). The possibility that a suc-

cessful defendant may have to defend its right to deny access to its disposal facility in a subsequent suit brought by the State of Michigan does not make Michigan a necessary party to this action. *Sindia Expedition,* 895 F.2d at 122.

Rule 19(a)(2) provides that a non-party should be joined if:

> the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence:
>
> (i) may as a practical matter impair or impede the person's ability to protect that interest, or
>
> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Subdivision (a)(2)(i) does not apply because the State of Michigan may always protect its interest in access to the waste disposal sites by voluntarily appearing and asserting its rights. *Sindia Expedition,* 895 F.2d at 122. Neither does subdivision (a)(2)(ii) apply. Since the State of Michigan has not sought to intervene in this case, as a practical matter there does not appear to be a substantial risk of multiple litigation or inconsistent obligations. *State Farm Mutual Automobile Ins. Co. v. Mid–Continent Casualty Co.,* 518 F.2d 292, 295 (10th Cir.1975). *See also, Defenders of Wildlife v. Andrus,* 77 F.R.D. 448, 452 (D.D.C.1978).

Moreover, the risk of multiple litigation does not of itself mandate joinder:

> The victorious party may have to face the State in another forum at another time. A decision in this case cannot impose any "obligation" as described in 19(a)(2)(ii) in the event of future litigation with the State.

*Sindia Expedition,* 895 F.2d at 123.

> [A]lthough we cannot deny the possibility that the resolution of this matter may engender subsequent litigation, ... it is the threat of *inconsistent* obligations, not the possibility of multiple litigation ... that determines Rule 19 considerations.

*Shelton v. Exxon Corp.*, 843 F.2d 212, 218 (5th Cir.1988) (citations omitted) (emphasis in original).

The Court is convinced that the State of Michigan is not a necessary party under Rule 19(a), and accordingly, joinder is not required.

■ Defendants have also asserted that the states of Nevada, South Carolina and Washington are necessary parties under Rule 19(a)(1), because in their absence complete relief between the parties cannot be granted. According to defendants, because 42 U.S.C. § 2021e(f)(1) grants the sited *states* the authority to deny access to their disposal sites, and because the Act does not designate any specific state agency or official to carry out this authority, the states must be made parties to the suit in order for an injunction to be binding upon them. Defendants argue that "[a]ny injunction that may be issued against the named Defendants will not bind the states and the states will be free to continue to deny access." (Defendant's brief, p. 22).

It is undisputed that the states have delegated the authority to administer the Act to certain agencies headed by defendants. Under F.R.Civ.P. 65(d), an injunction is binding on parties "and upon those persons in active concert or participation with them...." If the defendants were replaced by other officers, those officers would be bound by the injunction as well. A decree may bind one who succeeds to the powers exercised by the officer who was a party to the original suit. 11 Wright & Miller, *Federal Practice & Procedure*, § 2956, p. 572 (1973). Complete relief can be granted to plaintiff in the absence of the sited states, and accordingly those states are not necessary parties. Defendants' motion to dismiss on the basis of non-joinder of indispensable parties must be denied.

## C. *Eleventh Amendment Immunity*

■ Defendants contend that they are entitled to sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution. Defendants, rely on *Pennhurst State School and Hospital v.*

*Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), in support of their claim that this action against state officials in is fact an action against the sited states because the relief sought by plaintiff would serve to compel the states to act in renewing access to their disposal sites and restrain the states from performing their functions under the 1985 Act.

An action against state officials to enjoin conduct which is contrary to federal constitutional and statutory law is not barred by the Eleventh Amendment. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "*Will* leaves ample room for an action against state officials insofar as it seeks prospective relief allowed by the Eleventh Amendment." *Sutton v. Evans,* 918 F.2d 654, 657 (6th Cir. 1990). "[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Id.* at 658 (quoting *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986)).

In *Clallam County v. Department of Transportation,* 849 F.2d 424, 427 (9th Cir. 1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 790, 102 L.Ed.2d 782 (1989) (citations omitted), the Ninth Circuit held that an injunction against the state and the state agency was barred by the Eleventh Amendment. However, the Court held that the same was not true for the head of the agency:

> The eleventh amendment, however, does not preclude suit against a state official in federal court if the relief sought is prospective because, when a violation occurs, relief is "necessary to vindicate the federal interest in assuring the supremacy of that law."

*Id.* at 427 (citations omitted).

Even *Pennhurst,* cited by defendants, reiterated the holding in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), that "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunc-

tion that governs the official's future conduct, but not one that awards retroactive monetary relief." 465 U.S. at 102–103, 104 S.Ct. at 909.

Since plaintiff's complaint seeks prospective declaratory and injunctive relief against state officials to prevent the continuation of their alleged violation of federal law, the state officials are not immune from suit. Defendants' request for dismissal based on Eleventh Amendment Immunity must be denied.

### D. *Failure to Exhaust Administrative Remedies*

■ Defendants contend that plaintiff's complaint should be dismissed for failure to exhaust administrative remedies. According to the defendants, the Nuclear Regulatory Commission (the "NRC") has initial jurisdiction over issues of access to disposal facilities pursuant to 42 U.S.C. § 2021f. Defendants cite *Crocker v. Tennessee Secondary School Athletic Association*, 873 F.2d 933 (6th Cir.1989), and *Prevatte v. National Association of Secur. Dealers, Inc.*, 682 F.Supp. 913 (W.D.Mich.1988), for the proposition that until the plaintiff has exhausted its remedy before the NRC, this Court is without subject matter jurisdiction.

The message of *Crocker* and *Prevatte* is that the Court must look to the particular statutory language to determine whether Congress has created a requirement for the exhaustion of administrative remedies and whether those administrative remedies are adequate to protect the plaintiff's rights under the Act. *Crocker*, 873 F.2d at 935–36; *Prevatte*, 682 F.Supp. at 917.

In this case the Court is not convinced that the 1985 Act requires resort to administrative remedies in this context or that the NRC remedies provided are adequate to provide the requested relief.

42 U.S.C. § 2021f is the emergency access provision. It provides in part:

The Nuclear Regulatory Commission may grant emergency access to any regional disposal facility or non-Federal disposal facility within a State that is not

a member of a compact for specific low-level radioactive waste, if necessary to eliminate an immediate and serious threat to the public health and safety or the common defense and security.

Certainly the NRC has expertise to determine whether nuclear waste poses a threat to the public health and safety. However, plaintiff is not seeking emergency access to avoid a public disaster, but a full right of access pursuant to the terms of the 1985 Act. Plaintiff correctly notes that the emergency access provision does not give the NRC authority to review decisions by the sited states to deny access to generators. The lack of such authority makes sense because the NRC does not have expertise to determine if the sited states' actions are lawful under the statute. Those determinations are properly left to the Courts.

Defendant's request for dismissal for failure to exhaust administrative remedies must be denied.

### E. *Authority to Deny Access*

■ Having determined that defendants' threshold issues do not bar this action, the Court must now turn to the substantive arguments under the Act.

In Count I of its complaint plaintiff alleges that defendants lack any authority to deny access to the low-level radioactive waste disposal facilities located in their respective states under Section 5(e)(2) of the 1985 Act, since Michigan and the Midwest Compact have complied with the statutory milestones. Plaintiff seeks summary judgment. Defendants seek summary judgment in their favor, claiming that their actions are authorized by the Act.

Section 5(a) of the 1985 Act requires the sited states to make disposal capacity available for low-level radioactive waste generated outside the sited states until December 31, 1992, in return for payment of surcharges by the waste generators. 42 U.S.C. § 2021e(a) & (d). In order to encourage the non-sited states or compact regions to develop disposal facilities or alternative disposal methods, the Act contains a system of incentives and penalties

linked to four milestones dated July 1, 1986, January 1, 1988, January 1, 1990 and January 1, 1992.

Plaintiff has alleged that the State of Michigan has complied with the first three milestones. Defendants admit that Michigan complied with the 1986 milestone by ratifying compact legislation. (Answer to Complaint, ¶ 70). Defendants admit that Michigan and the Midwest Compact complied with the 1988 milestone by designating Michigan as the host state, by developing a siting plan and by delegating authority to implement the plan. (Answer, ¶ 72). Defendants further admit that Michigan complied with the 1990 milestone by filing the governor's certification that the State will be capable of providing for storage, disposal, or management of waste after December 31, 1992. (Answer, ¶¶ 41–43).

The dispute in this case relates to Michigan's continued compliance with the 1988 milestone.

The 1988 milestone requires each compact region to identify the host state, develop a siting plan, and delegate authority to implement the plan. 42 U.S.C. § 2021e(e)(1)(B)(i, & iii).[1] If the milestone is met, the Secretary of the Department of Energy is required to pay to the compact 25% of the surcharges collected between July 1, 1986 and December 31, 1987. 42 U.S.C. § 2021e(d)(2)(B)(ii). If the milestone is not met, any generator of low-level waste within the compact shall be charged twice the applicable surcharge between January 1, 1988 and June 30, 1988, and four times the applicable surcharge between July 1, 1988 and December 31, 1988, and any low-level radioactive waste generated within the compact may be denied access to the disposal facilities in the sited states after January 1, 1989. 42 U.S.C. § 2021e(e)(2)(B).

Plaintiff has come forward with evidence that Michigan enacted 1987 P.A. 202, M.C.L.A. § 325.491; M.S.A. § 14.528(351), which repealed a prior statute that prohibited the storage or deposit of radioactive waste in the state, that Michigan enacted the Low–Level Radioactive Waste Management Act, 1987 P.A. 203, M.C.L.A. § 333.13701 *et seq.*; M.S.A. § 14.15(13701) *et seq.*, which placed certain regulatory and other responsibilities in the Department of Public Health, and passed the Low–Level Radioactive Waste Authority Act, 1987 P.A. 204, M.C.L.A. § 333.26201 *et seq.*; M.S.A. § 14.15(26201) *et seq.*, to provide for matters pertaining to location, development, operation, regulation and licensing of a low-level radioactive waste disposal facility. This act also created the Michigan Low–Level Radioactive Waste Authority which in turn developed a siting plan and issued a document entitled "Site Selection Criteria for a Low–Level Radioactive Waste Isolation Facility".

---

1. The 1988 milestone provides as follows:

(B) By January 1, 1988.—
(i) each non-sited compact region shall identify the State in which its low-level radioactive waste disposal facility is to be located, or shall have selected the developer for such facility and the site to be developed, and each compact region or the State in which its low-level radioactive waste disposal facility is to be located shall develop a siting plan for such facility providing detailed procedures and a schedule for establishing a facility location and preparing a facility license application and shall delegate authority to implement such plan;
(ii) each non-member State shall develop a siting plan providing detailed procedures and a schedule for establishing a facility location and preparing a facility license application for a low-level radioactive waste disposal facility and shall delegate authority to implement such plan; and

(iii) The siting plan required pursuant to this paragraph shall include a description of the optimum way to attain operation of the low-level radioactive waste disposal facility involved, within the time period specified in sections 2021b to 2021j of this title. Such plan shall include a description of the objectives and a sequence of deadlines for all entities required to take action to implement such plan, including, to the extent practicable, an identification of the activities in which a delay in the start, or completion, of such activities will cause a delay in beginning facility operation. Such plan shall also identify, to the extent practicable, the process for (1) screening for broad siting areas; (2) identifying and evaluating specific candidate sites; and (3) characterizing the preferred site(s), completing all necessary environmental assessments, and preparing a license application for submission to the Nuclear Regulatory Commission or an Agreement State.

The Department of Energy determined that Michigan's and the Midwest Compact's actions complied with the 1988 milestone and made the surcharge transfer provided in 42 U.S.C. § 2021e(d)(2)(B)(ii). Compliance with the 1988 milestone is also demonstrated by the fact that Michigan generators were not charged the mandatory penalty surcharge under section 5(e)(2)(B)(i) for failure to comply with the 1988 milestone. 42 U.S.C. § 2021e(e)(2)(B)(i).

Defendants have not disputed any of these facts. Review of defendants' affidavits, exhibits and pleadings reveals that there is no genuine issue of fact that Michigan did comply with the 1988 milestone, at least at one time.

The basis for defendants' denial of access to Michigan waste generators is not Michigan's failure to meet the 1988 milestone but "its failure to *continue to comply* with the 1988 milestone after January 1, 1989." (Defendants' brief, p. 39) (emphasis added). "It is equally clear that Michigan *fell out of compliance* with the 1988 milestone and was therefore denied access to the disposal facilities for any waste generated within its borders." (Defendants' Reply Brief, p. 13) (emphasis added).

Defendants have come forward with affidavits in support of their claim that their denial of access was authorized by the Act. These affidavits from Governor Booth Gardner, Governor Robert Miller, Jerry Griepentrog, Dr. John Pate and Terry Husseman confirm that defendants do not dispute that Michigan *was* in compliance with the 1988 milestone at one time. Defendants' concern has been Michigan's failure to *remain* in compliance with the 1988 milestone.

The affidavits include the following language:

As a result of a careful analysis of Michigan's actions and inactions subsequent to the 1988 Milestone, we concluded that Michigan no longer met the requirements of the Act.

(Affidavit of Terry Husseman, Assistant Director for Waste Management, Washington Department of Ecology; Affidavit of Jerry Griepentrog, Director, Nevada Department of Human Resources).

The Board has carefully considered several acts and statements by officials of the State of Michigan which indicate that reliance on a simplistic view of milestones as "snapshots" in time is insufficient to assure the Board that Michigan is proceeding in good faith to comply with the Act.

(Affidavit of Dr. John B. Pate, M.D., Chairman, South Carolina Board of Health and Environmental Control).

In the case of Michigan, that state's failure to continue the siting process renders it out of compliance with the 1988 Milestone.

(Affidavit of Booth Gardner, Governor of the State of Washington; Affidavit of Bob Miller, Governor of the State of Nevada).

Defendants' claim that Michigan has "fallen out of compliance" with the 1988 milestone is based upon specific actions and inactions on the part of the State of Michigan articulated in defendants' pleadings and affidavits. The specific actions defendants point to as justification for their denial of access to Michigan waste generators are:

1. Michigan's failure to maintain the 1988 milestone siting plan time schedule for site development. (Michigan is 4 years behind the site operational date stated in its 1988 siting plan);

2. Michigan's halting of the siting process;

3. Michigan's failure to approve or respond to Compact amendments by party states;

4. Introduction of two bills into the Michigan Senate to withdraw Michigan as a party to the Midwest Compact;

5. Midwest Compact Commission resolution that Michigan's siting criteria may be so restrictive as to make it difficult or impossible to find a suitable location;

6. Michigan's governor's articulation of a goal of keeping a disposal site out of Michigan;

7. The lack of a technical foundation and defensible scientific basis to support some of the siting criteria;

8. Statement by James Cleary, Commissioner of the Michigan Low-level Radioactive Waste Authority, that he doubted that any location in Michigan can meet the strict siting criteria;

9. Michigan's adoption of siting criteria more stringent than location standards for a hazardous waste disposal facility;

10. Michigan's elimination of all three candidate areas from consideration as disposal sites;

11. Michigan legislature's funding of the legal expenses of a township opposed to the siting of a waste facility there.

The issue before this Court is one of statutory interpretation: are the milestones in the 1988 Act specific requirements that must be met by a certain date, or are they continuing obligations to be monitored by the sited states on a continuing basis?

The Sixth Circuit has outlined the following approach to statutory construction:

> In determining the meaning of legislation, we must first look to the plain language of the statute itself. If we find that the statutory language is unambiguous, then that language is regarded as conclusive unless there is a clearly expressed legislative intent to the contrary. If we find that the statute is ambiguous, we then look to its legislative history.

*Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir.1988) (citations omitted).

The denial of access provisions are found in sections 5(e) and 5(f) of the Act. Section 5(e) provides that a non-sited compact region may be denied access to the regional disposal facilities in the three sited states if it "fails to comply" with the Act's milestones for 1986, 1988, or 1990. 42 U.S.C. §§ 2021e(e)(2)(A), (B) & (C). Section 5(f) provides that the sited states have authority to deny access to any waste that "is not required to be accepted due to the failure of a compact region or State to comply with the requirements of subsection (e)(1) [the milestones] of this section." 42 U.S.C. § 2021e(f)(1).

If a state *does* comply with the milestones there is no authority for denying access prior to January 1, 1993.

The Act does not define "compliance" or "milestone". Defendants contend that since the Act provides that the sited states may deny access for failure to meet the 1988 milestone only after January 1, 1989, that this delay in the effective date of the denial of access indicates a legislative intent that a state remain in compliance with the 1988 milestone.

Defendants' interpretation of the Act is not persuasive. Compliance or non-compliance with each milestone triggers a variety of results. If the milestones are met, the states receive a surcharge refund. If the milestones are not met, the waste generators are charged a higher surcharge and may be denied access to the disposal sites. The surcharge refund, the additional surcharge and access all hinge on compliance or non-compliance with the milestones. Compliance should have a uniform definition throughout the Act. Whether a state has complied with a milestone should not be interpreted differently depending on whether the question is surcharges or access.

Defendants contend that the milestones are designed to insure progress toward the development of regional disposal sites, and that they should accordingly be allowed to deny access when a state fails to make meaningful progress. Specifically, defendants maintain that they have authority to deny access because Michigan has fallen behind the schedule established in its 1988 plan for identifying and licensing a regional disposal facility and because they believe that Michigan will not be able to submit a complete licensing application to the NRC as required in the January 1, 1992, milestone.

The Act contemplates the possibility of states not progressing according to schedule. The consequence provided by statute in such a situation, however, is not the denial of access to disposal sites in the sited states prior to January 1, 1993. The sited states are not authorized to deny ac-

cess for Michigan's failure to meet the 1992 milestone. The only penalty for failing to meet the 1992 milestone is a triple surcharge. 42 U.S.C. § 2021e(e)(2)(D).

If a state or compact is unable to provide for disposal of its low-level radioactive waste by January 1, 1993, then each state in which such waste is generated is given an option either to take possession and title to the waste, or to repay to the generators, with interest, the 25% surcharges collected between January 1, 1990 and December 31, 1992. 42 U.S.C. § 2021e(d)(2)(C). If, by January 1, 1996, a state or compact is still unable to provide for the disposal of its waste, each state loses the option to repay surcharges and is required to take possession and title to the waste and to accept liability for damages resulting from the state's failure to take possession of the waste. 42 U.S.C. § 2021e(d)(2)(C).

It is this Court's determination after reading the statute, that the sited states are only authorized to deny access if a milestone is not reached. Under the plain language of the Act, Congress has chosen dates certain and identified precisely what is required to be done by those dates. "When Congress provides specific and elaborate enforcement provisions, and entrusted their use to particular parties, we will not lightly assume an unexpressed intention to create additional ones." *Fox v. Reich & Tang, Inc.*, 692 F.2d 250, 255 (2nd Cir.1982).

Once the 1988 milestone is reached, the sited states do not have authority to monitor a state's progress under the siting plan. There is no provision in the statute that even hints of authorizing the sited states to monitor the good faith of the non-sited states in carrying out their site plan or abiding by the proposed schedule for development of a disposal facility.

Defendants have presented persuasive evidence that Michigan is disingenuous in its expressed intention to continue the siting process. Even conceding that Michigan has not made progress as outlined in its schedule submitted under the 1988 milestone, and even conceding that it appears that Michigan will not be able to meet the next milestone on January 1, 1992, the sited states nevertheless have no basis under the Act for denying access at this time because Michigan has taken the overt steps required under the Act to comply with the 1986, 1988 and 1990 milestones. Michigan is entitled to a judgment in its favor on Count I.

Granting Michigan access to the disposal facilities in the sited states at this time is not a long term solution to Michigan's low-level waste problem. Michigan may have a day of reckoning, but that day is not today. It is precipitous of the states to deny access at this time. After January 1, 1993, the sited states are authorized to exclude waste from outside their own compact regions.

Having determined that plaintiff is entitled to judgment in its favor on Count I, it is not necessary for this Court to consider plaintiff's alternative theories of recovery under Counts II through IV, for discrimination, unconstitutional burden on Interstate Commerce Clause, and violation of the Appointments Clause as these counts seek the identical relief sought in Count I.

### Conclusion

For the reasons stated herein, defendants' motion for summary judgment is denied and plaintiff's motion for partial summary judgment is granted as to Count I. Defendants are required to make capacity at the disposal facilities in their respective states available for the disposal of low-level radioactive waste generated in Michigan until December 31, 1992, pursuant to the provisions of Section 5(e) of the 1985 Act, 42 U.S.C. § 2021e(e); and defendants, their agents, employees, servants, attorneys and those persons in active concert or participation with them who receive actual notice of the order are permanently enjoined from denying access to the disposal facilities in their respective states for disposal of low-level radioactive waste generated in Michigan prior to January 1, 1993.

An order consistent with this opinion will be entered.

## ON MOTION FOR STAY

This matter is before the Court on defendants' motion for stay of judgment and permanent injunction dated June 18, 1991, pending resolution of their appeal.

In deciding whether to issue a stay pending appeal pursuant to F.R.Civ.P. 62(c) or F.R.App.P. 8(a), the court should consider the following factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *Congregation Lubavitch v. Cincinnati,* 923 F.2d 458, 460 (6th Cir.1991).

### 1. *Likelihood of Success*

Ordinarily the party seeking a stay must show a strong or substantial likelihood of success. *Ohio ex rel. Celebrezze v. Nuclear Regulatory Com.,* 812 F.2d 288, 290 (6th Cir.1987). However, because the factors are balanced, as the degree of irreparable injury the movants will 'suffer absent a stay increases, the probability of success that must be shown decreases. *Id.*

Defendants claim a likelihood of success on the merits of two issues that will be raised on appeal. First, they contend that the court erred in finding personal jurisdiction over defendants. Second, they contend that the Court's interpretation of the Low Level Radioactive Waste Policy Amendments Act of 1985 (the "1985 Act"), 42 U.S.C. § 2021b *et seq.,* is erroneous because it ignores the legislative history of the 1985 Act. Defendants have not presented any new arguments on either of these issues to persuade this Court that its initial determination was in error or that defendants have a strong or substantial likelihood of success on the merits of their appeal.

### 2. *Irreparable Injury*

In evaluating the harm associated with the granting or the denial of the stay, the Court looks to three factors:

(1) the substantiality of the injury alleged,

(2) the likelihood of its occurrence, and

(3) the adequacy of the proof provided.

*Ohio ex rel. Celebrezze,* 812 F.2d at 290. The harm alleged must be both certain and great, rather than speculative or theoretical. *Id.*

The harm identified by defendants is that the waste, once received, must be buried in perpetuity and defendants will be burdened with the responsibility of ensuring essentially perpetual care for the waste. Defendants anticipate that if a stay is not granted they will be forced to accept 3000 cubic feet per month, for a total of 76,000 cubic feet of waste from Michigan until January 1, 1993 if the appeal is not decided in their favor before that time.

Even assuming defendants are correct in their assertion that once received the waste must remain in perpetuity, the harm to the defendants is not substantial. There is no evidence that waste from Michigan is any different from the waste defendants have accepted for decades and must continue to accept from other sources until 1993. Neither is the amount of waste substantial. Defendants are required to make disposal capacity available for up to 19,600,000 cubic feet of waste during the 7 year transition period form 1986 to 1993, based upon an average annual volume of 2,800,000 cubic feet at the three sites. 42 U.S.C. § 2021e(a) & (b). The estimate of 36,000 cubic feet per year from Michigan is not a large percentage of the average annual volume, and defendants will continue to be protected by the volume limitations under the 1985 Act.

### 3. *Harm to Other Parties*

If a stay is granted, plaintiff's members will be required to continue to store accumulations of radioactive waste on site in temporary storage facilities. Requiring plaintiff's members to be responsible for the interim storage of 76,000 cubic feet of

**1012**

low-level radioactive waste at their various locations presents cost, planning, and manpower issues. More importantly, however, it presents safety risks. The greater the number of locations where waste is stored on a temporary basis, the more difficult inspection and regulation becomes and the greater the potential for inadequate storage and inadvertent or accidental contamination and exposures.

### 4. *The Public Interest*

There are a number of public interests that bear upon the request for a stay, including the interest of the sited states in receiving the benefits of the Act in return for accepting its burdens, the public interest in enforcing the provisions of the 1985 Act, and the interest of the nation at large in insuring an orderly process for managing and disposing of radioactive waste and for implementing long-term solutions to the disposal problem. However, the most crucial concern is public safety. *Ohio ex rel. Celebrezze*, 812 F.2d at 292. The public has an interest in the safe disposal of low-level radioactive waste. That interest weighs heavily in favor of disposal of low-level radioactive waste at licensed disposal facilities rather than interim storage at numerous temporary on site facilities.

### *Conclusion*

Having considered and balanced the four factors described in *Hilton*, the Court is under the firm conviction that the potential harm to defendants in the absence of a stay is outweighed by public safety concerns. Accordingly, defendants' motion for stay must be denied.